# United States Court of Appeals
## For the First Circuit

No. 09-2049

AMELIA PETERS BINGHAM, ET AL.,

Plaintiffs, Appellants,

v.

COMMONWEALTH OF MASSACHUSETTS,

Defendant, Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Lynch, Chief Judge,
Souter, Associate Justice,[*]
and Selya, Circuit Judge.

Robert L. Bowens with whom Bowens Law Office was on brief for appellants.
John Michael Donnelly, Assistant Attorney General, with whom Martha Coakley, Attorney General, was on brief for appellee.

July 30, 2010

---

[*]    The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**LYNCH**, **Chief Judge**.  In 2008, plaintiffs Amelia Peters Bingham and her son, Steven, brought a Takings Clause claim against the Commonwealth of Massachusetts and the Town of Mashpee, seeking just compensation and the return of some of the lands in Massachusetts they say were granted in perpetuity to their ancestors, the South Sea Indians, in deeds from 1665 and 1667.

Plaintiffs styled this claim as a class action on behalf of themselves and all similarly situated descendants of the South Sea Indians, now known as the Mashpee Wampanoag.  The Mashpee Wampanoag have been a federally recognized tribe since 2007.  72 Fed. Reg. 8007-01 (Feb. 22, 2007).  Plaintiffs do not claim that the Commonwealth or Town directly seized lands from their tribal ancestors.  Rather, plaintiffs argue that two Massachusetts statutes enacted in 1869 and 1870 deprived them of their right to hold in perpetuity all of the land currently comprising the Town of Mashpee by removing restraints on alienation and, later, by facilitating the sale of certain lands.

The district court held that the plaintiffs lacked standing and dismissed their claims against the Commonwealth and Town, Bingham v. Massachusetts (Bingham I), No. 08-11770, 2009 WL 1259963, at *1-2 (D. Mass. May 6, 2009), and affirmed that dismissal on plaintiffs' motion for reconsideration, Bingham v. Massachusetts (Bingham II), No. 08-11770, 2009 WL 1886128, at *2 (D. Mass. July 2, 2009).  Plaintiffs appeal only the dismissal of

-2-

their claims against the Commonwealth. The Commonwealth asserts that the Eleventh Amendment bars this suit from being brought against it in federal court and that plaintiffs, in any event, lack standing.

We affirm and hold that there is no jurisdiction to hear this case, because even when viewing all factual allegations in plaintiffs' favor, plaintiffs cannot show they have suffered a personal injury as a result of the challenged state actions. We do not reach the Eleventh Amendment issues, nor do we reach any statute-of-limitations issues.

I.

We accept as true the following allegations of fact, as stated in plaintiffs' complaint and in supporting documentation, and construe them in the light most favorable to plaintiffs. See Sanchez v. Pereira-Castillo, 590 F.3d 31, 41 (1st Cir. 2009); Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33-34 (1st Cir. 2001).

Deeds in 1665 and 1667 granted the subject land-- substantial portions of the land that currently comprise the Town of Mashpee--to "the South Sea Indians: and their[] Children for ever: and not to be sold or given away from them by any one: without all their[] Consents there unto." In 1685, the General Court of Plymouth Colony "confirme[d] said land to the said Indians, to be perpetually to them & their children, as that no

-3-

part of them shall be granted to or purchased by any English [non-tribal member] whatsoe[v]er . . . without the consent of all the said Indians."  See Mashpee Tribe v. Town of Mashpee (Mashpee I), 447 F. Supp. 940, 944 & n.2 (D. Mass. 1978), aff'd sub nom. Mashpee Tribe v. New Seabury Corp., 592 F.2d 575 (1st Cir. 1979) (interpreting the word "English" in the 1685 grant to include any non-Indians).[1]

Plaintiffs' complaint alleges that these deeds conveyed individual, inheritable rights in the subject lands to the grantees and that these interests passed to plaintiffs as the direct lineal descendants of the South Sea Indians.[2]  In support of this contention, plaintiffs listed their predecessors going back five

---

[1]    Our review of a motion to dismiss on grounds of standing is ordinarily confined to the complaint and to "further particularized allegations of fact deemed supportive of plaintiff's standing." Warth v. Seldin, 422 U.S. 490, 501 (1975).  However, the text of the deeds and earlier judicial opinions addressing prior, related claims to the land in the Town fall under a narrow exception, which allows courts to additionally consider "official public records" and "documents sufficiently referred to in the complaint," among other materials. Alt. Energy, Inc., 267 F.3d at 33-34.

[2]    Because plaintiffs claim property rights based on formal deeds they say the Pilgrims granted, we understand plaintiffs' claim as not relying on the theory of aboriginal title. See N. Newton et al., Cohen's Handbook of Federal Indian Law § 15.04[2], at 969-70 & 969 n.28 (2005 ed.) (describing different ways in which Indian tribes and individual Indians have obtained interests in real property).  Aboriginal title (also called "original Indian title") derives from the tribe's continuous possession of lands and is a "right of occupancy in the Indian tribes . . . good against all but the sovereign," Oneida Indian Nation v. Cnty. of Oneida, 414 U.S. 661, 667 (1974), as distinguishable from fee title, see James v. Watt, 716 F.2d 71, 74 (1st Cir. 1983).

generations.  The complaint did not specify birth or death dates, details about residency, or their predecessors' relationship to the South Sea Indians.  It explained that "[a]s a general rule," records prior to the nineteenth century "were not maintained for Indians."

Between 1685 and 1834, Plymouth Colony, and later the Commonwealth, continually recognized the restraints on alienation contained in the original deeds as the subject land evolved from an Indian plantation to the "Mashpee Propriety."  In 1834, parts of the subject land became the "District of Mashpee," but the restraints on alienation in the original deeds endured.

In 1842, the Massachusetts General Court passed a law providing that much of the lands in the district would now be held in severalty by proprietors, who included Indians who had occupied and improved the land.[3]  See Mashpee I, 447 F. Supp. at 945 (describing proprietors).  Proprietors were allotted acreage from the common lands, in addition to any lands they already held in severalty, so that each proprietor held at least sixty acres.  Id. The remainder of the subject land--some three thousand acres--was still held in common by the selectmen of the district, who were all Indians.  Id. at 945-46.  The 1842 law again confirmed the

_____

   [3]   We use the term "Indians," as opposed to "Native Americans," for the sake of consistency with the language of the original deeds and relevant statutes.

-5-

restraints on alienation from the seventeenth-century deeds.  Id.

at 945.

In 1869, however, the Massachusetts General Court enacted

a statute providing, in relevant part, that

> [a]ll lands heretofore known as Indian lands,
> and rightfully held by any Indian in
> severalty, and all such lands which have been
> or may be set off to any Indian, shall be and
> become the property of such person and his
> heirs in fee simple . . . and all Indians
> shall hereafter have the same rights as other
> citizens to take, hold, convey and transmit
> real estate.

1869 Mass. Acts ch. 463, § 2.[4]  The law removed restraints on the

alienation of the subject land, and plaintiffs allege this was over

the objections of a majority of South Sea Indian descendants who

attended a hearing on the legislation.[5]

A year later, in 1870, the Massachusetts General Court

passed a law creating and incorporating the Town of Mashpee.  The

---

[4]     The 1869 act, entitled "An Act to Enfranchise the Indians
of the Commonwealth," was a general recognition statute that also
conferred full citizenship on "[a]ll Indians . . . within this
Commonwealth."  Section 1 of the law declared all Indians "to be
citizens of the Commonwealth, and entitled to all the rights,
privileges and immunities, and subject to all the duties and
liabilities to which citizens of this Commonwealth are entitled or
subject."  1869 Mass. Acts ch. 463, § 1.

[5]     The 1869 act permitted but did not require any Indian to
alienate his lands.  1869 Mass. Acts ch. 463, § 2.  Some have
viewed the act as beneficial to the Indians because it added to the
bundle of property rights the same rights of alienation as others
held.  See, e.g., James, 716 F.2d at 75.  Plaintiffs' complaint
simply alleges the act was a source of unidentified harm to their
ancestors' property rights.

law provided that "[a]ll common lands . . . held by the district of Marshpee, are hereby transferred to the town of Mashpee, and shall be owned and enjoyed as like property and rights of other towns are owned and enjoyed." 1870 Mass. Acts ch. 293, § 1. Another provision of the 1870 law stated that upon application of the Town's selectmen, a superior court justice could, after notice to all interested parties and a hearing, determine that "it is for the interest of said parties that any or all of the common lands of said town, or of the people heretofore known as the Marshpee tribe of Indians, be divided." Id. § 6. The justice could then appoint three "discreet, disinterested persons [as] commissioners to make partition of the same." Id.

The gravamen of plaintiffs' complaint is that the 1869 and 1870 statutes "took ownership interests in the subject land that belonged to the plaintiffs without paying just compensation,"[6] in violation of the Takings Clause. They allege that the removal of restraints on the alienation of Indian lands in the 1869 act

_____

[6] Plaintiffs did not assert claims under any other specific constitutional provisions or statutes applicable to Indian tribes, such as the Indian Commerce Clause, U.S. Const. art. I, § 8, cl. 3, or the Indian Nonintercourse Act (INA), 25 U.S.C. § 177. Plaintiffs have also consistently portrayed the instruments at issue as deeds, not treaties.

Plaintiffs' complaint cursorily asserted that the Town and Commonwealth had "violated the plaintiffs' rights pursuant to federal common law and federal Indian policies through their ongoing claim, holding, and/or use and occupancy of portions of the subject land." That language is too vague to state a claim on these grounds under any standard.

deprived plaintiffs of their "perpetual interest in . . . ownership." "[T]hrough" the 1870 act creating the Town, the Commonwealth also "transferred the common land of substantial portions of the subject land" to the Town, which sold "[a]pproximately three thousand acres of the subject land" at an unspecified later date. "Between 1870 and the present date," plaintiffs conclude, most of the subject land promised to the tribe in perpetuity has been conveyed to non tribal members without the consent of all tribal descendants.

Plaintiffs seek the return of "every portion of the subject land which is claimed, held, occupied, and/or used" by defendants, "with the exception of any substantial building structures and any other structures of improvements that serve a critical role in state or town operations." They also seek fees for the use of land so held or used and just compensation "for the ownership interests in the subject land that were taken from the plaintiffs in 186[9] and 1870." They do not seek the return of land held by private parties.

On May 6, 2009, after a hearing on the Commonwealth and Town's separate motions to dismiss, the district court granted the motions and dismissed plaintiffs' complaint for lack of jurisdiction. See Bingham I, 2009 WL 1259963, at *1-2. It held that plaintiffs lacked standing to sue irrespective of whether the deeds conveyed lands to the South Sea Indians as a tribe or to

individual members.  Id. at *1.  Plaintiffs did not represent the tribe and thus could not sue on the tribe's behalf.  Id. at *1-2. Even if the deed conveyed rights to individual tribal members, plaintiffs failed to identify individual ancestors who had actually inherited property under the deeds or to otherwise trace their interest through successive generations.  Id. at *1.

On July 2, 2009, the district court denied plaintiffs' motion for reconsideration.  See Bingham II, 2009 WL 1886128, at *2.

II.

We review the district court's dismissal for lack of standing de novo.  Though we construe the facts and draw reasonable inferences in plaintiffs' favor, plaintiffs bear the burden of "clearly alleging definite facts to demonstrate that jurisdiction is proper."  Nulankeyutmonen Nkihtaqmikon v. Impson, 503 F.3d 18, 25 (1st Cir. 2007).

To establish standing under Article III of the U.S. Constitution, plaintiffs "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."  Hein v. Freedom from Religion Found., Inc., 551 U.S. 587, 598 (2007) (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)) (internal quotation marks omitted).

The district court correctly held that plaintiffs lack standing because they failed to show a personal injury. Plaintiffs must show they had an individual interest in the property rights granted in the seventeenth-century deeds in order to show they were personally injured by the later state actions affecting those property rights. Plaintiffs can do so only if the deeds conveyed to plaintiffs' individual ancestors discrete property interests that passed through successive generations. Even when viewing all facts in the light most favorable to plaintiffs, and taking all reasonable inferences in their favor, plaintiffs have not alleged sufficient facts to surmount this bar.

The relevant language in the 1665 deed conveyed the subject lands to "the South Sea Indians: and their[] Children for ever: and not to be sold or given away from them by any one: without all their[] Consents there unto." The 1685 grant contained similar material language. In plaintiffs' favor, we will assume, as the district court did, that the reference to the "South Sea Indians . . . and their[] children" is ambiguous.[7]

---

[7] We bypass the Commonwealth's arguments that our precedents involving these instruments conclusively interpreted this language. The Commonwealth cites Mashpee I, 447 F. Supp. 940, and Mashpee Tribe v. Watt (Mashpee II), 542 F. Supp. 797 (D. Mass. 1982), aff'd, 707 F.2d 23 (1st Cir. 1983), in support of its contention. In neither case was the district court faced with construing the 1665 deed. And those arguments were not at issue in the appeals to this circuit, which affirmed on other grounds not relevant to the issue of land status.

Indeed, those earlier cases concerning the Mashpee Tribe's claims to the subject lands at issue here concerned different

Plaintiffs insist the deed and grant did not convey the lands to the collective members of the tribe in common. Under that interpretation, the ownership of the land would belong to the tribe as a whole, and no individual member would have a personal interest in a particular share of the property. See N. Newton et. al., Cohen's Handbook of Federal Indian Law § 16.01[2], at 1037 (2005 ed). Only the tribe would have standing to sue for any injury to its interests under the deed. Plaintiffs argue the deed must be read as conveying individual interests in the land to individual tribal members.

We need not determine whether the conveyances were to individual tribal members or to the collective tribe, because plaintiffs lack standing under either interpretation. Plaintiffs do not represent the tribe, nor do they claim the capacity to do so. Plaintiffs cannot assert the rights of the tribe, as an

---

issues entirely. Mashpee I primarily discussed claims under the INA asserted by the "Mashpee Tribe" as a collective tribe. Plaintiffs' primary theory was that the 1869 and 1870 acts lifted restraints on alienation in violation of the INA, which permits only the federal government to do so. See New Seabury Corp., 592 F.2d at 579; Mashpee I, 447 F. Supp. at 942-43. Mashpee II involved claims under the INA, Indian Commerce Clause, and Supremacy Clause by individual tribal members as well as the tribe. The district court held, and this circuit affirmed, that only the tribe had standing to bring such claims and that Mashpee I had conclusively established that the Mashpee Tribe was not recognized as a tribe under federal law. 707 F.2d at 24-25; 542 F. Supp. at 800-06. We do not decide what effect the Department of the Interior's 2007 designation of the Mashpee Wampanoag as a federally recognized tribe has on those opinions.

entity, simply by styling their claim as a class action on behalf of all tribal descendants.[8]

Even assuming arguendo that the deed conveyed discrete property rights to the tribe's individual members, plaintiffs still cannot show a personal injury. Plaintiffs have alleged they are direct descendants of South Sea Indian grantees who were the original beneficiaries of the deeds. Plaintiffs have not, however, alleged any facts showing that their ancestors actually held an individual, inheritable interest in the subject land that passed through successive generations. And they have not alleged any facts showing their ancestors actually held individual and inheritable interests in the subject land as of 1869-70.

Plaintiffs have also failed to allege that any such interests were affected as a result of the 1869 and 1870 acts in ways that resulted in the transfer or loss of ownership of those lands. Nor have they pled any facts showing that the loss of any "right" to hold the lands in perpetuity has caused them any injury. Plaintiffs say that "[t]hrough" the 1870 act, between 1870 and the present, many of the subject lands were ultimately conveyed to non-

_____

    [8]    Indeed, the tribe and its authorized representatives have repeatedly and strenuously disavowed plaintiffs' suit. In April 2008, the tribe entered into an agreement with the Town in which it received certain Town lands in exchange for waiving all claims to property located within the Town. On November 5, 2008, the tribe further distanced itself from plaintiffs' suit, formally resolving at a tribal council meeting that "the Tribal Counsel condemns the land claim action brought by Steven Bingham and Amelia Bingham."

-12-

Indians, but a vague allegation of harms occurring over an undefined, 140-year time period is not the kind of concrete, particularized injury required to show standing. See, e.g., Sutliffe v. Epping Sch. Dist., 584 F.3d 314, 325-26 (1st Cir. 2009). These shortcomings are fatal to plaintiffs' ability to show that they had an identifiable personal stake in the property rights at issue and that they suffered a concrete injury fairly traceable to the Commonwealth's allegedly unlawful conduct. This holding, of lack of pleading of individual harm from the 1869-1870 acts, also disposes of their procedural due process claim, which fails for futility.

Plaintiffs argue the district court erred when it dismissed their complaint sua sponte on the ground that the Binghams failed to allege sufficient genealogical data to support individual interest standing and they could not assert standing on behalf of the tribe. The Town's motion to dismiss had argued only that the tribe, not individual tribal members, had standing to sue for injuries to property interests granted in the seventeenth-century deeds. The Town did not address, until its reply brief to the motion for reconsideration, the issue of lack of individual interest standing.

Plaintiffs' motion to reconsider and to amend their complaint to add the names of ancestors going back to the 1665 and 1667 deeds, dates of birth and death for previous generations, and

the names of ancestors who were grantees under the deeds would, as we have held, not have changed the outcome. In light of that futility, there no error in denial of reconsideration and the motion for leave to amend.

The judgment is <u>affirmed</u>.