Peter A. CRAWFORD, Plaintiff,

v.

Celia BLUE, individually and in her official capacity as the Massachusetts Registrar of Motor Vehicles, and Rachel Kaprielian, individually and in her official capacity as the former Massachusetts Registrar of Motor Vehicles, Defendants.

CIVIL ACTION NO. 14–13042–WGY

United States District Court,
D. Massachusetts.

Signed 09/21/2017

Peter A. Crawford, Rye, NH, pro se.

Douglas S. Martland, David R. Marks, Office of the Attorney General, Boston, MA, for Defendants.

## MEMORANDUM & ORDER

YOUNG, D.J.

## I. INTRODUCTION

Peter A. Crawford ("Crawford") filed this action against Celia Blue and Rachel Kaprielian, current and former Massachusetts Registrars of Motor Vehicles (collectively, the "Defendants"), under 42 U.S.C. section 1983, for violation of his rights under the federal and Massachusetts state constitutions in connection with a speeding ticket and the ensuing revocation of his Massachusetts operating privileges. Crawford alleges two separate due process violations: first, with respect to the nonrefundable $25 filing fee required to appeal a civil motor vehicle infraction ("CMVI") under Massachusetts General Laws, chapter 90C, section 3, and second, for the suspension of his Massachusetts operating privileges under the same state law. The parties filed cross-motions for summary judgment.

## A. Procedural History

Crawford filed an amended complaint on August 4, 2014. Am. Compl., ECF No. 6. After hearing the Defendants' motion to dismiss on November 19, 2014, this Court dismissed the complaint except for the count alleging a due process violation. Electronic Clerk's Notes, ECF No. 12. The Court later granted summary judgment after a hearing on April 8, 2015. Electronic Clerk's Notes, ECF No. 32. On appeal, the First Circuit remanded the case for a closer examination of the Mathews factors on Crawford's procedural due process claim. J. United States Ct. Appeals ("J. USCA") 2 & n.1, ECF No. 42 (citing Mathews v. Eldridge, 424 U.S. 319, 334–35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

After further discovery, the parties have now filed cross-motions for summary judgment and supporting memoranda. Pl.'s Mem. Supp. Mot. Summ. J. ("Pl.'s Mem."), ECF No. 57; Pl.'s Mem. Opp'n Defs.' Cross Mot. Summ. J. and Reply Mem. Supp. Mot. Summ. J. ("Pl.'s Reply"), ECF No. 74; Defs.' Mem. Law Opp'n Pl.'s Mots. Summ. J. ("Defs.' Mem."), ECF No. 70. The parties have also submitted statements of fact and counterstatements of fact. Pl.'s Local Rule 56.1 Statement Undisputed Material Facts Supp. Mot. Summ. J. ("Pl.'s Statement Facts"), ECF No. 58; Pl.'s Resp. Defs.' Local Rule 56.1 Statement Material Facts ("Pl.'s Resp. Facts"), ECF No. 75; Defs.' Local Rule 56.1 Statement Material Facts ("Defs.' Statement Facts"), ECF No. 72; Defs.' Resp. Pl.'s Local Rule 56.1 Statement Facts ("Defs.' Resp. Facts"), ECF No. 73. The Court heard oral arguments on the parties' cross-

motions on July 14, 2017.[1] Electronic Clerk's Notes, ECF No. 80.

## B. Undisputed Factual Background
### 1. Crawford's Citation

On July 19, 2011, a police officer issued Crawford, a resident of Rye, New Hampshire, a speeding citation in the amount of $140 for driving 34 mph in a 20 mph zone in Salem, Massachusetts. Pl.'s Statement Facts ¶ 1; Defs.' Statement Facts ¶ 1. Crawford timely requested a hearing challenging the citation, but did not include the $25 filing fee because the fee was not mentioned on the ticket. Defs.' Statement Facts ¶ 2. On August 2, 2011, the Massachusetts Registry of Motor Vehicles (the "Registry") responded to Crawford's hearing request by mail, informing him that pursuant to Massachusetts General Laws, chapter 90C, section 3(A)(4), scheduling a CMVI hearing requires the payment of a $25 court filing fee. Id. ¶ 3. Crawford responded to the letter on August 15, 2011, refusing to pay the filing fee on the ground that it violated his state and federal constitutional rights. Id. ¶ 4. On August 22, 2011, a Registry employee called Crawford regarding his citation, explaining the requirements under the state law, and advised Crawford that the failure to pay the citation's assessment would result in the suspension of his Massachusetts driving privileges, which could affect his New Hampshire license. Id.

On January 3, 2012, the Registry mailed Crawford a second notice regarding his Massachusetts driving privileges, advising him that his privileges would be suspended, effective February 2, 2012, because he

---

1. The Court had understood that the parties wished to treat their cross motions as a case stated, see, e.g., TLT Constr. Corp. v. RI, Inc., 484 F.3d 130, 135 n.6 (1st Cir. 2007) (citing United Paperworkers Int'l Union Local 14 v. International Paper Co., 64 F.3d 28, 31 (1st Cir. 1995)), but, at the last minute, Crawford demurred and the Court has therefore carefully drawn all reasonable inferences against each moving party in turn, see Lowel–Light Mfg., Inc. v. Federal Deposit Ins. Corp., 848 F.Supp. 278, 281 (D. Mass. 1994).

had defaulted on the July 19, 2011 citation, and informing him that to avoid the suspension, he would have to pay the citation and late fees or appear at a Registry office. Id. ¶ 7. Crawford had moved from Nashua to Rye, New Hampshire in August 2010, Pl.'s Statement Facts ¶ 1, and did not receive the notice because the Registry sent it to his old address in Nashua, Defs.' Statement Facts ¶ 7. Having received no payment, the Registry suspended Crawford's Massachusetts operating privileges on February 12, 2012. Id. ¶ 8. The New Hampshire Division of Motor Vehicles declined to renew Crawford's New Hampshire driver's license on April 18, 2012, because the Massachusetts Registry's entry of suspension triggered an electronic report to the National Driver Registry. Id. ¶¶ 9–10.

Rather than challenge the Massachusetts suspension, Crawford pursued administrative and judicial remedies in New Hampshire for the non-renewal of his license. Id. ¶ 12. On June 24, 2014, Crawford sent a letter to the Registry asserting that Massachusetts General Laws, chapter 90C, section 3 did not permit the suspension of his operating privileges for failing to pay the filing fee. Id. ¶ 13. A Registry hearing officer, treating the letter as a post-suspension appeal, issued a decision denying Crawford's appeal on the ground that he failed to pay the $25 filing fee. Id. ¶ 14. The decision informed Crawford that he had a right to appeal to the Board of Appeal on Motor Vehicle Liability Policies and Bonds. Id.

## 2. Filing Fee

Effective July 1, 2009, the Massachusetts General Court implemented a $25 filing fee for a CMVI hearing before a clerk-magistrate of the district court, partially to offset the costs associated with providing the hearing. Id. ¶ 15. All violators, except the indigent, must pay the filing fee to the Registry to receive a hearing to appeal their citation.[2] Id. In 2009, when the filing fee first took effect, there were extensive delays in receiving hearings (e.g., between three and six months in one court, and possibly over six months in other courts) due to individuals who were unprepared to pay the filing fee and requested hearings only to receive more time to pay the citation. Id.

As a result of these delays, the legislature implemented a further change, effective July 1, 2010, to have the Registry collect the filing fee before forwarding a hearing request to the district court for scheduling. Pl.'s Statement Facts ¶ 13. The funds received by the Registry, less $100,000, are transferred to the district court. Id. ¶ 14. Since 2010, if a motorist fails to pay the filing fee, the hearing request is not transmitted to the district court. Id. ¶ 16. The effect of the 2010 change was to reduce wait times to as little as three weeks. Defs.' Statement Facts ¶ 16.

The Merit Rating Board (the "Board") and the Registry jointly administer CMVI matters. Id. ¶ 17. Four employees handle initial receipt of citations, hearing requests, and payments. Id. Another two electronically scan documents into an electronic file. Id. Eleven employees handle data entry related to citations with requests for hearing. Id. Additional employees handle quality control and the financial reconciliation of payments of filing fees and assessments. Id. The Defendants calculate that if an average of fifteen such employees handled CMVI hearing re-

---

**2.** In 2015, the district court granted 368 indigence waivers, as compared to the 116,825 hearing requests the Registry received with the filing fee paid (0.32%). Pl.'s Statement Facts ¶ 18.

quests each year, the annual salary cost would range from $747,314.25 to $986,110.20. Id.

Based on its 2013 "CMVI Staffing Model," the district court determined that each "standard" CMVI (86% of cases) takes 25 minutes from start to finish, with 10.4 minutes spent on the hearing and 14.6 minutes spent on administrative and clerical tasks, while a complex case (14% of cases) takes 45 minutes, with 19.9 minutes spent on the hearing and 24.1 minutes spent on administrative and clerical tasks. Id. ¶ 19.

## II. LEGAL FRAMEWORK

### A. Summary Judgment Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Mulloy v. Acushnet Co., 460 F.3d 141, 145 (1st Cir. 2006). "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990). If the moving party satisfies its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). But see Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)(where the moving party bears the burden of proof, absent admissions by the non-moving party, summary judgment is inappropriate as the fact-finder need not credit evidence favorable to the moving party). In reviewing motions for summary judgment, courts must resolve all disputed facts and inferences in favor of the non-moving party. See Seaboard Sur. Co. v. Town of Greenfield, 370 F.3d 215, 219 (1st Cir. 2004). "Cross-motions for summary judgment do not alter the basic Rule 56 standard, but rather simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Adria Int'l Grp., Inc. v. Ferre Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001).

### B. Massachusetts State Law

Massachusetts General Laws, chapter 90C, section 3 gives police officers the authority to issue citations for civil motor vehicle infractions. Mass. Gen. Laws ch. 90C, § 3(A)(1). The recipient of a citation may "either pay the scheduled assessment or contest responsibility for the infraction by requesting a noncriminal hearing before a magistrate of the district court." Id. § 3(A)(2). The motorist may contest responsibility by "making a signed request for a noncriminal hearing on the back of the citation and mailing such citation, together with a $25 court filing fee, to the registrar," which then notifies the district court to set a hearing. Id. § (A)(4). Determinations may be appealed to the appellate division. Id. § (A)(5). If a violator fails to appear, the Registry will mail a notice indicating that, "in the case of an operator violation, such violator's operators license, learners permit or right to operate will be suspended by operation of law and without further notice or hearing at the expiration of thirty days from the date of the mailing of such notice." Id. § (A)(6).

## III. ANALYSIS

Two primary questions remain in this litigation: whether the $25 mandatory filing fee for CMVI appeals under Massachusetts General Laws, chapter 90C, section 3 and the suspension of Crawford's Massachusetts operating privileges pass constitutional muster under the Mathews balancing test. The Court first addresses a standing concern, then the Mathews factors with respect to both deprivations in

turn, concluding finally with an examination of the Defendants' immunity defense to monetary damages.

## A. Standing

■ Before delving into the Mathews analysis, this Court addresses a threshold issue. On remand, the Defendants now dispute Crawford's standing to challenge the filing fee, arguing that because Crawford never paid the $25 filing fee, he "was not harmed by the due process violation he identifies." Defs.' Mem. 12. They argue that because Crawford has narrowed his constitutional challenge to instances in which the filing fee is not refunded to prevailing appellants, "Crawford needs to prove three things to establish a deprivation: that he (1) paid the $25 court-filing fee, (2) participated in the clerk-magistrate hearing and was deemed not responsible, and (3) had no opportunity [sic] recover the $25." Id.

■ It is well-established that to have standing, "a claimant must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling." Davis v. Federal Election Comm'n, 554 U.S. 724, 733, 128 S.Ct. 2759, 171 L.Ed.2d 737 (2008) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Further, "[t]he threshold issue in a procedural due process action is whether the plaintiff had a constitutionally protected property interest at stake." Mard v. Town of Amherst, 350 F.3d 184, 188 (1st Cir. 2003) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538–41, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); Board of Regents v. Roth, 408 U.S. 564, 576–78, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). The First Circuit

has defined the relationship between these two requirements: "To establish an injury in fact for purposes of Takings Clause and procedural due process claims, plaintiffs must 'show that they had an identifiable personal stake in the property rights at issue.'" Santiago–Ramos v. Autoridad de Energía Eléctrica de Puerto Rico, AEE, 834 F.3d 103, 106 (1st Cir. 2016) (quoting Bingham v. Massachusetts, 616 F.3d 1, 7 (1st Cir. 2010)).

The question thus is whether Crawford had an "identifiable personal stake" in the $25 filing fee and in his Massachusetts operating privileges. It is undisputed that Crawford had a constitutionally protected interest in his Massachusetts operating privileges. See Bell v. Burson, 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) ("Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees."). The Defendants, however, contend that because Crawford never paid the $25 filing fee to obtain an appeal, "Crawford's claim that he is deprived of a property interest in his $25 is purely hypothetical." Defs.' Mem. 13.

Contrary to the Defendants' characterization, Crawford's payment of $25 is not a necessary condition of his standing to challenge the constitutionality of the fee. Crawford is not personally seeking a refund in this case. Whether he can "prove a legitimate entitlement to a refund," id. at 12, is in fact immaterial for the purposes of standing. The essence of Crawford's challenge is that his operating privileges were revoked due to the inadequate procedures for appealing CMVIs—an appeal in which the filing fee is an integral part. This claim is sufficient to satisfy the threshold procedural due process requirement that Crawford possess an identifiable

property interest.[3] Moreover, the First Circuit has already declared that Crawford has a constitutionally protected interest in the $25 filing fee. J. USCA 2. Therefore the Defendants' reformulation of the standing requirement is unavailing.

## B. Procedural Due Process

 "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Mathews, 424 U.S. at 332, 96 S.Ct. 893. To determine what process is due, courts weigh three factors: "(1) the private interest ... that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the fiscal and administrative burdens posed by alternative procedural requirements." Penobscot Air Servs., Ltd. v. Federal Aviation Admin., 164 F.3d 713, 723 (1st Cir. 1999) (quoting Mathews, 424 U.S. at 335, 96 S.Ct. 893) (internal quotation marks omitted).

### 1. Filing Fee [4]

 This Court first addresses the balancing of the Mathews factors in Craw-

3. The Defendants' cited authority is inapposite. In Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1 (1st Cir. 2005), the First Circuit held that the threshold requirement of a "legitimate claim to entitlement" was not met where a state statute "ma[de] it pellucid that the plaintiffs had no legally cognizable right to vie" on an equal footing with a medical school for a contract to operate a hospital. Id. at 8. No such state statute precludes the existence of a protected interest here. Nor can the Defendants rely on Boston Environmental Sanitation Inspectors Ass'n v. City of Boston, 794 F.2d 12 (1st Cir. 1986), in which the First Circuit affirmed the dismissal of a procedural due process claim on the grounds that the plaintiffs failed to avail themselves of state remedies. Id. at 13. The court specifically noted that the plaintiffs did not "allege any facts to suggest that these remedies might be constitutionally inadequate." Id.

Furthermore, to the extent that the Defendants base their challenge on Crawford's inability to show injury for the purposes of Article III standing, this Court concludes that the deterrent effect of the filing fee on CMVI appeals as well as the revocation of Crawford's operating privileges that followed his nonpayment of the filing fee adequately satisfies the malleable definition of constitutionally sufficient injury adopted by courts. See Adams v. Watson, 10 F.3d 915, 918 (1st Cir. 1993) ("The injury-in-fact inquiry 'serves to distinguish a person with a direct stake in the outcome of a litigation—even though small—from a person with a mere interest in the problem.' " (quoting United States v. Students Challenging Regulatory Agency Procedures, 412 U.S. 669, 690 n.14, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973))); Dimarzo v. Cahill, 575 F.2d 15, 18 (1st Cir. 1978) (plaintiffs had standing to challenge hazardous fire conditions even absent physical injury or death from fire).

4. The parties cite two Supreme Judicial Court ("SJC") cases. First, in Gillespie v. City of Northampton, 460 Mass. 148, 950 N.E.2d 377 (2011), the SJC upheld a $275 filing fee in Superior Court to challenge a hearing officer's determination of responsibility for a parking ticket. Id. at 149, 950 N.E.2d 377. Under that statutory provision, however, an individual is entitled to a written appeal, followed by "a live hearing and formal adjudication, by the parking clerk or a designated hearing officer, as a matter of right, at no cost, and with no restrictions imposed by formal rules of evidence or discovery." Id. at 157, 950 N.E.2d 377. Only after these administrative procedures have been exhausted is an individual required to pay the $275 filing fee in state court. See id. at 150–51, 950 N.E.2d 377. Second, in Police Department of Salem v. Sullivan, 460 Mass. 637, 953 N.E.2d 188 (2011), the plaintiff was denied a refund of his $25 filing fee after he was ultimately found not responsible for a traffic citation, and challenged the same statute, Mass. Gen. Laws ch. 90C, § 3, as unconstitutional. Id. at

ford's challenge to the CMVI appeals filing fee. In regards to the first factor, the First Circuit noted that "the private interest at stake, which, though small ($25), is a precondition to any hearing of the relatively 'consequential' and 'serious matte[r]' of traffic violations." J. USCA 2 (alteration in original) (quoting Gillespie v. City of Northampton, 460 Mass. 148, 160, 950 N.E.2d 377 (2011)). The Supreme Judicial Court in Gillespie, examining the private interest prong, stated that although alleged parking offenders stood to lose as much as one hundred dollars, "[t]his is not an entirely insubstantial interest, but, given the small sums involved, hardly one that society would regard as 'precious.'" Gillespie, 460 Mass. at 156, 950 N.E.2d 377 (citing Commonwealth v. Barboza, 387 Mass. 105, 111, 438 N.E.2d 1064 (1982)).

Most courts have noted that "deprivation of a monetary interest ... is far less serious a harm than, for example, the deprivation of employment." Dowd v. New Castle Cty., No. 10-82-SLR, 2011 WL 1419663, at *11 (D. Del. Apr. 13, 2011) (citing City of Los Angeles v. David, 538 U.S. 715, 717–18, 123 S.Ct. 1895, 155 L.Ed.2d 946 (2003)) (noting that civil penalties in the amount of "$100 is a small interest"); see also Sickles v. Campbell Cty., 501 F.3d 726, 730 (6th Cir. 2007) (reasoning that private interests of $20 and $110.27 "do not begin to approach the kinds of government conduct that have required a predeprivation hearing, such as a limitation on the 'historic' 'right to maintain control over [one's] home,' or the termination of government benefits, which for many people are 'the very means by which to live'" (citations omitted)).

The CMVI statistics provide further context. From 2007 to 2016, the average uncontested citations paid ranged from $129.05 to $136.86 per citation (calculated as the total uncontested amounts collected by the Registry divided by the number of uncontested citations). Pl.'s Aff. Supp. Mots. Summ. J. and Prelim. and Permanent Injs., Ex. 9, Defs.' Suppl. Resp. Pl.'s Interrogs. 15 and 16 ("CMVI Data") 10, ECF No. 61–9. In 2015 for example, the $25 fee represented 18% of the average uncontested citation amount of $135.18. Id. Furthermore, while the number of citations issued has declined from 2007 to 2016, the total amount of filing fees collected in 2015 was $2,920,625. Id. Finally, though the absolute number of indigence waivers may be small (368 in 2015), nothing in the record indicates that the process of granting such waivers is flawed. Id. Nevertheless, in light of the less serious interest at issue and the insubstantial size of the filing fee (particularly given the indigence waiver available to those for whom the fee represents a real financial hardship), the private interest is minimal.

The second Mathews factor examines "the risk of erroneous deprivation accruing under the procedures used by the state; and the probable benefit of demanding additional procedural safeguards." Amsden v. Moran, 904 F.2d 748, 753 (1st Cir. 1990) (citations omitted). The Defendants appear to misunderstand (or deliberately mischaracterize) Crawford's argument, arguing that "[t]he question is not the risk of erroneous deprivation of the $25," but rather "whether there is a risk of erroneous deprivation [as to] whether an operator has an adequate opportunity to contest the citation." Defs.' Mem. 17–18. In fact, Crawford is challenging that the $25 must be

---

638, 953 N.E.2d 188. There, the SJC held that the fee did not violate equal protection under a rational basis standard, but specifically stated that it would "not consider the merits of

Sullivan's due process argument" because it had been waived on appeal. Id. at 639, 953 N.E.2d 188. Neither of these two cases, therefore, is on point.

paid regardless of the outcome of the hearing. Crawford expressly "agrees that the process for challenging the $140 [citation] is constitutionally adequate except for the $25 ... 'filing fe[e].' " J. USCA 2. It is precisely the risk of erroneous deprivation of the filing fee that this Court must consider, as explicitly stated by the First Circuit. J. USCA 2.

Specifically, Crawford argues that the risk of erroneous deprivation is reflected in the CMVI statistics whenever the Registry retains the $25 filing fee following a finding of "not responsible." Pl.'s Mem. 1–2. In 2015, the percentage of all hearings that resulted in findings of not responsible was 57.9%, which in absolute terms is 70,899 hearings. CMVI Data 10. Multiplying this number by the $25 filing fee yields $1,772,475 in filing fees collected for hearings that resulted in findings of not responsible. Id. From 2007 to 2016, in absolute terms, the number of hearings resulting in a finding of not responsible ranged from 50,287 to 128,358. Id. This wide range is due in large part to the drastic reduction in total citations the Registry received from the police. The annual percentages of not responsible findings has stayed within a relatively narrow band, ranging from 48.4% in 2011 to 57.9% in 2015, with an average over the period of 52.9%. Id.

Crawford suggests two alternative procedures that he argues would "reduce the 57.9 percent risk of erroneous deprivation to essentially zero." Pl.'s Mem. 11. First, Crawford proposes giving refunds to those found not responsible. Id. Second, he suggests waiting to impose the $25 until after the motorist is found responsible. Id. at 11. Either of these two alternative procedures

would drastically reduce the risk of erroneous deprivation. Both would eliminate risk of erroneous deprivation for the entire class of motorists who pay the fee, then obtain a finding of "not responsible" Neither fix would eliminate, however, the risk for those who pay the fee and are mistakenly found "responsible." Furthermore, the second option—charging the fee after a finding of responsible—negates some of the deterrence effect, and therefore may lead to an increase in frivolous filings. Nevertheless, the record indicates that both of these incremental changes are feasible within the existing administrative system. Therefore, the second factor, based on the statistical evidence of the risk of erroneous deprivation coupled with Crawford's proposed incremental changes, weighs in Crawford's favor. The cost-benefit analysis for implementing these alternatives will be examined below.

The key battleground is the third factor, which breaks down into two components: "the Government's interest ... and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335, 96 S.Ct. 893. The first component, which considers the government's interest, is straightforward and largely undisputed here. The Defendants maintain that the Massachusetts state legislature has a legitimate and compelling interest in deterring frivolous CMVI appeals that "impose[d] great[ ] demands on the resources of the District Court." Defs.' Mem. 17 (alteration in original) (quoting Police Dep't of Salem v. Sullivan, 460 Mass. 637, 642, 953 N.E.2d 188 (2011)). Indeed, courts have upheld fee requirements as a means to deter frivolous litigation.[5] See, e.g.,

---

**5.** The Defendants claim that "[i]t is well-established that the Commonwealth may condition the opportunity to pursue judicial review on the payment of a fee designed to offset administrative costs and deter frivolous filing." Defs.' Mem. 14. This argument overlooks a key distinction in the cases rejecting the right to cost-free access to courts. While

Hampton v. Hobbs, 106 F.3d 1281, 1288 (6th Cir. 1997) ("The government's interest in the fee system is that of reducing frivolous prisoner suits to relieve the strain that litigation is placing on federal courts and the prison system in general."); In re South, 689 F.2d 162, 165 (10th Cir. 1982) (weighing legitimate interests of "recoup[ing] some of the costs of the bankruptcy system" and deterring frivolous proceedings in favor of government). The record shows that wait times for hearings were reduced from three to six months to three weeks in one court.[6] Defs.' Mem. 17; Defs.' Statement Facts ¶¶ 15–16. As courts have also held, "[t]he government has a powerful interest in the prompt collection of revenue." Kahn v. United States, 753 F.2d 1208, 1222 (3d Cir. 1985) (alteration in original) (quoting Ueckert v. United States, 581 F.Supp. 1262, 1265 (D.N.D. 1984)). Here, it is undisputed that prior to the implementation of the 2010 change, which required the payment of the fee in order to secure a hearing date, a significant number of appeals were filed only to delay payment of fees. Defs.' Statement Facts ¶ 15.

The second part of the public interest prong contemplates a cost-benefit analysis, and presents a more difficult question. While the Court acknowledges on prong two that Crawford's proposed alternative procedures would drastically reduce the risk of erroneous deprivation, it is also true that "[a]t some point the benefit of an additional safeguard to the individual affected by the administrative action and to society ... [is] outweighed by the [public] cost," Mathews, 424 U.S. at 348, 96 S.Ct. 893. Due process does not require further protections where "[t]he cost of providing additional safeguards ... necessarily outweighs any benefits gained by the expenditure of money and human resources." Toney v. Burris, 881 F.2d 450, 454 (7th Cir. 1989). Nevertheless, "these rather ordinary costs cannot outweigh the constitutional right," Fuentes v. Shevin, 407 U.S. 67, 90 n.22, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (citations omitted), and "the Constitution recognizes higher values than speed and efficiency," id.

The Defendants note that the government interest at stake "arises in the broader context of the Commonwealth's regulation of motor vehicles," arguing that "[b]y driving in Massachusetts, Crawford agreed to participate in this regulatory structure, of which M.G.L. c. 90C § 3 is part." Defs.' Mem. 14. In support, the Defendants point to Luk v. Commonwealth, 421 Mass. 415, 658 N.E.2d 664 (1995), in which the Supreme Judicial Court stated that "[c]ontinued possession of [one's operating] privilege is conditioned on obedience to the Legislature's comprehensive regulatory scheme aimed at regulating the motorways and keeping them safe." Defs.' Mem. 14 (quoting Luk, 421 Mass. at 423, 658 N.E.2d 664). This argument, which appeals

---

the Supreme Court has held that states may "erect reasonable procedural requirements for triggering the right to an adjudication," Logan v. Zimmerman Brush Co., 455 U.S. 422, 437, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); see also United States v. Kras, 409 U.S. 434, 446–48, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973), the Defendants ignore the fact that filing fees in civil cases are taxable fees that are awarded to prevailing parties, 28 U.S.C. § 1920; Fed. R. Civ. P. 54(d). The Defendants have not identified a case involving access to courts in which a court upheld a

fee that was never recoverable by a prevailing party. Cf. Yagman v. Garcetti, 852 F.3d 859, 866 (9th Cir. 2017) (upholding deposit required to challenge parking ticket that is returned to prevailing party).

**6.** Crawford notes, however, that the number of "not responsible" findings as a percentage of total citations issued has been decreasing, which "indicates that legitimate challenges are being deterred as well." Pl.'s Mem. 10.

to the logic of constitutional avoidance,[7] relies on the idea that the government must be permitted to charge a fee to run a government service that confers benefits on a large swath of Massachusetts society.

The Court is unpersuaded by this argument for one primary reason. If a motorist believes he or she was wrongfully cited, it is a stretch to say that they "choose" to take advantage of the appeals process where they face the dilemma of paying the fine or forfeiting their operating privileges. Indeed, the Supreme Court specifically noted in Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), which involved access to divorce courts, that "[t]he requirement that these appellants resort to the judicial process is entirely a state-created matter." Id. at 383, 91 S.Ct. 780. It is precisely in cases such as these, in which the government forces an individual to proceed through its adjudicative process in order to exercise a right or defend a protected interest, that the Court's due process scrutiny must be at its zenith. Even where the government may have an important interest in implementing a valuable program, the Due Process Clause was "designed to protect the fragile values of a vulnerable citizenry from the overbearing concern for efficiency and efficacy that may characterize praiseworthy government officials no less, and perhaps more, than mediocre ones." Stanley v. Illinois, 405 U.S. 645, 656, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). It is against that backdrop that this Court proceeds to examine the merits of Crawford's proposed alternative procedures to reduce the risk of erroneous deprivation.

Beginning with the first of Crawford's alternatives, the Registrar estimates that the cost of scaling up the existing manual refund system, which currently processes approximately 10,000 refunds, would be $172,000 per year for an expanded refund department. Pl.'s Statement Facts ¶ 25. Crawford adds that this cost could be reduced by automating the refund printing process, and points out that "[t]he data already exists in the Registry's computer system to enable refund checks to be printed automatically following findings of 'not responsible.'" Pl.'s Mem. 11; Pl.'s Statement Facts ¶¶ 19, 30. In regards to the second option, the Registry estimates the cost of reprogramming at $182,000. Pl.'s Statement Facts ¶ 32. In addition to reprogramming, there are approximately two million unused citations in the Registry's warehouse that contain text indicating that a filing fee is required to obtain a hearing. The cost of reprinting these citations is estimated to be $227,740. Id. ¶ 37. The combined cost is a one-off cost of $410,000 to implement the second option. Crawford compares these costs against the

---

7. Notably, in Markadonatos v. Village of Woodridge, 760 F.3d 545 (7th Cir. 2014), a divided Seventh Circuit examined a due process challenge to a non-refundable "bond fee" for posting bail. Writing for three judges, Judge Posner invoked the constitutional avoidance doctrine to dismiss the due process claim, stating that the $30 fee was simply part of the "cost" of the government providing a service. Id. at 547. Analogizing it to the right to travel, Judge Posner noted that although one has a fundamental right to travel, one must pay for a passport. Id. He also reasoned that

the doctrine of constitutional avoidance functions to minimize friction between courts and legislatures (including state and municipal legislatures). The plaintiff asks us to hold that a local government of Illinois is committing grave violations of his constitutional rights—rights that might conceivably (if implausibly) be traced all the way back to Magna Carta. That imputation should not lightly be leveled against a state government entity, even as modest a one as the Village of Woodridge, Illinois. A saving construction is available to our court; we should embrace it.

Id. at 550.

$1,772,475 in filing fees collected from 70,-899 individuals who were found not responsible in 2015 alone.

This is an extremely close case. But the relatively simple adjustment of expanding or automating the existing refund process to avoid penalizing individuals who are ultimately found not responsible for the citation tips the balance of the factors in Crawford's favor. See Roberts v. Maine, 48 F.3d 1287, 1304 (1st Cir. 1995) (Cyr, J., concurring) ("The ease with which an alternative procedure can be implemented likewise weighs heavily in favor of an amendment to the [existing procedure]." (citing Mathews, 424 U.S. at 348, 96 S.Ct. 893)). Accordingly, the filing fee requirement constitutes a due process violation.

## 2. Revocation of Operating Privileges

■ The second, related issue, on which the First Circuit declined to take any view, is whether Crawford is entitled to an injunction restoring his Massachusetts operating privileges. J. USCA 2. Because Crawford declined to pay the filing fee to appeal his citation, and also failed to pay the citation, he defaulted on his July 19, 2011 citation pursuant to Massachusetts General Laws, chapter 90C, section 3. Defs.' Statement Facts ¶ 7. Crawford argues that because his driving privileges were suspended, "and the notice sent to, but not received ... was not reasonably calculated to reach him, his due process rights were violated on the suspension independent of whether the fee violates due process." Pl.'s Mem. 6. On January 3, 2012, the Registry mailed Crawford a second notice regarding his Massachusetts driving privileges, advising him that his privileges would be suspended, effective February 2, 2012, because he had defaulted on the July 19, 2011 citation, and informing him that to avoid the suspension, he would have to pay the citation and late fees or appear at a Registry of Motor Vehicles ("RMV") office.

Defs.' Statement Facts ¶ 7. Because of the Registry's clerical error, however, his address was not updated, and the notice was therefore sent to his old address. Id. Crawford did not find out about the suspension until he was denied a license renewal by the New Hampshire Division of Motor Vehicles in April 2012. Id. ¶ 10.

Crawford's challenge to the suspension of his Massachusetts operating privileges relies primarily on the failure to receive notice. His argument, however, hinges on the misaddressed final notice sent by the Registry on January 12, 2012. First, there is no legal support for the argument that the failure to follow state procedures always results in a due process violation. Indeed, courts have held that such a showing alone is not enough. See, e.g., Hicks v. City of Watonga, 942 F.2d 737, 746 n.4 (10th Cir. 1991). Crawford fails to explain why the publication of the statute, along with the August 2011 notice and phone call from the Registry, provided insufficient notice of the impending suspension.

Courts have noted that clear language in a statute can give notice, particularly where the individual is aware of the statute. Mard, 350 F.3d at 190 ("Mard therefore could have turned to the statute ... if she was unclear about the reason for the Town's request to attend an Independent Medical Examination."). Furthermore, Crawford had a telephone conversation with an employee of the Registry, who explained that failure either to pay or appeal the citation would result in the suspension of his operating privileges. Def.'s Statement Facts ¶¶ 3–4. The purpose of the due process notice requirement is to ensure that an individual can take the necessary steps to challenge a deprivation. See City of W. Covina v. Perkins, 525 U.S. 234, 240, 119 S.Ct. 678, 142 L.Ed.2d 636 (1999) ("It follows that when law enforcement agents seize property pursuant to

warrant, due process requires them to take reasonable steps to give notice that the property has been taken so the owner can pursue available remedies for its return."). On this record, the undisputed facts clearly demonstrate that Crawford was given adequate notice.

Crawford argues that there was no separate pre-deprivation hearing for the license suspension, during which he could have argued "the unconstitutionality of M.G.L. c. 90C § 3, and the fact that non-payment of the filing fee, once a hearing has been requested, is not a statutory basis for suspension." Pl.'s Mem. 17. The Mathews framework provides a more one-sided analysis on this issue. On the first factor, Crawford had a protected interest in his operating privileges. Bell, 402 U.S. at 539, 91 S.Ct. 1586. The risk of erroneous deprivation, however, was low, given the suspension was triggered by the objective fact that Crawford failed to pay or appeal his citation. See Mackey v. Montrym, 443 U.S. 1, 13, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979) (upholding license suspensions based on "objective facts either within the personal knowledge of an impartial government official or readily ascertainable by him"). Finally, the Defendants correctly note that "Massachusetts has a substantial interest in securing public safety on its roads by suspending the operating privileges of drivers who default on CMVIs." Def.'s Mem. 22. Accordingly, the Mathews factors weigh against the need for a pre-deprivation hearing on the suspension.

The Defendants appeal to Jones v. City of Boston, 752 F.3d 38 (1st Cir. 2014), Defs.' Mem. 23, in which the First Circuit noted that even in the absence of a pre-deprivation hearing, "an extensive post-termination appeal system lessens the need for an elaborate pre-termination process," Jones, 752 F.3d at 57–58 (citing Mard, 350 F.3d at 192). When the Registry received Crawford's June 2014 letter challenging his suspension, it treated the letter as a post-suspension appeal, and a hearings officer in the Driver Control Unit issued a written decision appealable to the Board of Appeal on Motor Vehicle Liability Policies and Bonds. Def.'s Statement Facts ¶ 14. The Defendants note that if Crawford had appealed to the Board, he could have challenged the Registrar's statutory authority to suspend his operating privileges. Def.'s Mem. 24. In another session of this Court, Judge Woodlock dismissed a factually similar due process challenge to a driver's license revocation. Packard v. Hinden, No. 05-11906-DPW, 2007 WL 2746799, at *6 (D. Mass. Sept. 7, 2007). There, although the plaintiff did not have a pre-deprivation hearing in Massachusetts, the combination of a hearing to challenge the underlying ticket in Rhode Island and post-deprivation procedural protections in Massachusetts constituted adequate due process. Id.

Because Crawford was given adequate notice and afforded sufficient post-deprivation remedies, the Mathews factors weigh against requiring a pre-deprivation hearing. The suspension of his Massachusetts driving privileges, therefore, did not violate due process.

## C. Immunity

Crawford's claim for damages against the Defendants in their official capacity is foreclosed by the Commonwealth's sovereign immunity under the Eleventh Amendment. "As a general matter, the Eleventh Amendment bars suits in federal courts against unconsenting states (including 'official capacity' suits against state hierarchs)." Rosie D. ex rel. John D. v. Swift, 310 F.3d 230, 234 (1st Cir. 2002) (citations omitted).

Crawford also sues the Defendants in their personal capacities. "[O]ffi-

cials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law [i.e., qualified immunity]." Hafer v. Melo, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (citations omitted). In assessing a defense of qualified immunity, courts examine: "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Maldonado v. Fontanes, 568 F.3d 263, 268–69 (1st Cir. 2009) (citing Pearson v. Callahan, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)). Courts have discretion to proceed directly to the second question. Id. at 269–70. On the second prong, the "'salient question ... is whether the state of the law' at the time of an incident provided 'fair warning' to the defendants 'that their alleged [conduct] was unconstitutional.'" Tolan v. Cotton, — U.S. —, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895 (2014) (quoting Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)). Here, it is undisputed that the Defendants were merely following the letter of the state law. Crawford puts forth no evidence suggesting that they should have known the state law was unconstitutional. The Defendants are therefore immunized from monetary damages.

This brings Crawford's action against the former Registrar, Rachel Kaprelian, to an end as Crawford can have no further claim against her. Judgment will enter in her favor.

### D. Injunctive Relief

 The Court having declared that Massachusetts' nonrefundable filing fee—even as to those appellants who prevail in their CMVI hearings—denies those appellants procedural due process, Crawford seeks immediate injunctive relief against the current Registrar, Celia Blue. As a matter of discretion, the Court declines to grant injunctive relief.

The Massachusetts Constitution of 1780 established the principle of separation of powers among the legislative, executive, and judicial branches of the Commonwealth's government, Massachusetts General Laws Annotated, part 1, article 30, and provided a template for the incorporation of that same principle in our United States Constitution. See, e.g., Bernard Schwartz, Curiouser and Curiouser: The Supreme Court's Separation of Powers Wonderland, 65 Notre Dame L. Rev. 587, 588–589 (1990) (discussing the influence of this state provision on the U.S. Constitution). Massachusetts's jurisprudence, however, came to develop a respectful presumption not as fully developed in its federal counterpart—the rebuttable presumption that once the law is authoritatively declared, executive agencies will be presumed to follow the law without explicit order. Massachusetts Coal. for Homeless v. Secretary of Human Servs., 400 Mass. 806, 825, 511 N.E.2d 603 (1987) ("[I]t has been our practice to assume that public officials will comply with the law declared by a court and that consequently injunctive orders are generally unnecessary."); see also Smith v. Commissioner of Transitional Assistance, 431 Mass. 638, 651, 729 N.E.2d 627 (2000); Boston Elevated Ry. Co. v. Commonwealth, 310 Mass. 528, 543, 39 N.E.2d 87 (1942).

So here. Once the Registrar has evaluated her appellate options (this is, after all, a close case, supra at section III.B.1), this Court has every confidence that she, in cooperation with the Massachusetts General Court, will—without federal judicial order—obey the United States Constitution

and devise a procedure to refund the filing fee to those held to have been wrongfully cited for motor vehicle infractions. How she does it ought be up to her. She may, of course, continue to charge everyone who can afford it a filing fee in order to deter frivolous appeals. Indeed, she may raise the filing fee for every appellant to cover the Commonwealth's administrative costs in returning the fee to those found to have been wrongfully cited. Or perhaps she could devise an even more innovative solution. It is up to her so long as it is constitutional.

## IV. CONCLUSION

For the reasons set forth above, Crawford's motion for summary judgment is ALLOWED in part with respect to Crawford's due process challenge to the filing fee requirement of Massachusetts General Laws, chapter 90C, section 3. Although this case presents a very close question, the due process balancing weighs in Crawford's favor. On the related challenge to the suspension of his Massachusetts operating privileges, the combination of adequate notice and post-deprivation remedies constitutes sufficient due process. In this and all other respects Crawford's motion for summary judgment is DENIED. The Defendants' motion for summary judgment is DENIED insofar as the current Registrar must now deal with this Court's declaration of the constitutional law. The Court is confident she will do so. As to remedies, the Defendants' motion for summary judgment is ALLOWED and judgment shall enter for both Defendants.

### SO ORDERED.