19-33-cr
*United States v. Muzio*

# United States Court of Appeals
# for the Second Circuit

August Term, 2019

(Argued: February 28, 2020          Decided: July 15, 2020)

Docket No. 19-33-cr

_____

UNITED STATES OF AMERICA,

*Appellee,*

v.

GEORGE MUZIO, JR.,

*Defendant-Appellant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

Before:

LIVINGSTON and PARK, *Circuit Judges*, and UNDERHILL,
*Chief District Judge*.[1]

Defendant-Appellant George Muzio, Jr. appeals from a judgment of conviction entered by the United States District Court for the Northern District of New York (D'Agostino, *J.*) primarily sentencing him to a 420-month term of

_____

[1] Judge Stefan R. Underhill, Chief United States District Judge for the District of Connecticut, sitting by designation.

imprisonment.  We conclude that Muzio's sentence is reasonable and **AFFIRM**. Judge Underhill dissents in a separate opinion.

TERRENCE L. KINDLON, The Kindlon Law Firm, PLLC, Albany, New York, *for Defendant-Appellant*.

PAUL D. SILVER, Assistant United States Attorney, *for* Grant C. Jaquith, United States Attorney for the Northern District of New York, Albany, New York, *for Appellee.*

PARK, *Circuit Judge*:

This case concerns the reasonableness of a criminal sentence for child pornography offenses.  The district court primarily sentenced Defendant-Appellant George Muzio, Jr. to a below-Guidelines, 420-month term of imprisonment.  In light of Muzio's reprehensible conduct, we conclude that the district court acted well within its discretion.  We therefore affirm.

## I. BACKGROUND

A.    Facts

From August 2014 to May 2016, Muzio exploited at least fourteen underage girls, luring them into sending him a trove of sexually explicit pictures and videos

of themselves.[2] Muzio, who was in his thirties, posed as a teenage boy on the internet and manipulated his victims by saying that he was suffering from cancer and by repeatedly professing his love for them, including telling several girls that he would marry them when they were older. He also pressured his victims into sending more pictures and videos when they protested.

Muzio then traded many of these pictures and videos with at least one other person on the internet in exchange for more child pornography. He also traded the usernames of his victims with at least two other child pornography consumers, along with "suggestions for ways to approach the girls online so the others could contact and proposition the girls for additional images and videos." App'x at 138–39.

In addition, Muzio downloaded and otherwise received substantial quantities of child pornography. At the time of his arrest, Muzio had approximately 400 videos of child pornography on his laptop. He also surreptitiously videotaped his adolescent female neighbor on hundreds of occasions from the second-floor window of his home.

---

[2] Although the government identified only 14 victims, Muzio told probation that he had actually "communicated with over 100 minors online," and he "estimated over seventy-five of those conversations were sexual in nature."

## B.     Procedural History

Muzio was charged with, and ultimately pled guilty to, two counts of sexual exploitation of a child in violation of 18 U.S.C. §§ 2251(a), (e); six counts of distribution of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A), (b)(1); and one count of possession of child pornography in violation of 18 U.S.C. §§ 2552A(a)(5)(B), (b)(2).  Muzio faced a mandatory minimum sentence of 15 years and a maximum of 30 years for each exploitation count, *see id*. § 2251(e); a mandatory minimum of 5 years and a maximum of 20 years for each distribution count, *see id.* § 2252A(b)(1); and a maximum of 20 years for the possession count, *see id*. § 2252A(b)(2).

In advance of sentencing, the Probation Office prepared a Pre-Sentence Report (the "PSR").  In calculating Muzio's Guidelines range under the United States Sentencing Guidelines, the PSR found that Muzio was in Criminal History Category I and that his conduct warranted the highest possible offense level of 43, yielding a Guidelines range of life.  Because each crime carried a statutory maximum sentence of less than life, however, the PSR concluded that Muzio's

4

actual Guidelines range was the combined statutory maximum of 6,000 months.[3]
*See* U.S.S.G. § 5G1.2(b).

At sentencing, Muzio asked the district court to impose a mandatory minimum sentence of 15 years, to run concurrently on all counts. He did not object to the PSR, which the district court adopted in full. The district court imposed a sentence of 420 months' incarceration—the mandatory minimum of 15 years for each child-exploitation count and 5 years for one of the distribution counts, to run consecutively, and 5 years each for the remaining distribution and possession counts, to run concurrently with all counts—to be followed by a lifetime term of supervised release.

In explaining its sentence, the district court detailed the depth of Muzio's exploitative conduct. It noted that the two victims of the sexual exploitation counts were only 11 and 13 years old, and it explained how Muzio "sucked these [children] into sending [Muzio] vile, pornographic images . . . by telling them that [he] loved them." App'x at 143–44. The district court further observed that, in a victim impact statement, one of the victims "indicated that she's lost emotional trust of men, that it's affected her ability to have healthy and happy relationships,

---

[3] As discussed below, *see* Section II(B), *infra*, the PSR erred in calculating this combined statutory maximum. Muzio's actual Guidelines range was 2,400 months.

that she struggles with Post-Traumatic Stress Disorder, that she doesn't want to be touched, that she's had numerous counseling sessions and she still suffers. She suffers from issues of judgment." App'x at 149.

The district court also emphasized the breadth of Muzio's conduct, which involved "thousands and thousands of conversations with children all throughout the United States and throughout the world." App'x at 146. Muzio's victims, the district court observed, are "real" people who are "never going to be able to forget what they did," and whose images and videos "will live on forever . . . on the internet." App'x at 148. "Children are supposed to be able to lead their lives without being subjected to this kind of evil." App'x at 162.

The district court acknowledged the letters from family and friends that "indicate[d] that [Muzio] w[as] a good person, a good father, that [he was] a baseball coach, that [he] did good things in the community." App'x at 148. It also credited Muzio's "history of mental health issues," and noted that "after his arrest, [Muzio] indicated he had been sexually abused" as a child. App'x at 152, 153. Nevertheless, the district court concluded that "the only reason to impose a non-guideline sentence in this case is the fact that the guideline range calls for a

sentence of 500 years," which was "greater than necessary to meet the goals of sentencing." App'x at 153, 150. This appeal follows.

## II. DISCUSSION

A.     Substantive Reasonableness

On appeal, Muzio primarily challenges the substantive reasonableness of his sentence. "[O]ur review of a sentence for substantive reasonableness is particularly deferential," and we will set aside "only those sentences that are so shockingly high, shockingly low, or otherwise unsupportable as a matter of law that allowing them to stand would damage the administration of justice." *United States v. Broxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012) (internal quotation marks omitted). Mindful of this standard, we conclude that Muzio's sentence "easily falls within the range of permissible decisions available to the district court." *United States v. Rivernider*, 828 F.3d 91, 111 (2d Cir. 2016).

The district court carefully reviewed the record and determined that Muzio's conduct warranted a 35-year sentence. We agree. As described above, Muzio's conduct was abhorrent, notable for both the number of victims and the lengths he went to manipulate them. The district court therefore acted well within its discretion in imposing a 35-year sentence.

7

Muzio's arguments to the contrary are unavailing. First, Muzio contends that his sentence "conflicts with" our decisions in *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010), and *United States v. Jenkins*, 854 F.3d 181 (2d Cir. 2017). Appellant's Br. at 20. But *Dorvee* and *Jenkins* do not stand for the proposition that nearly any sentence for child pornography above the mandatory minimum is substantively unreasonable. *See* Appellant's Br. at 24. Muzio's reliance on those cases is thus misplaced.

Neither *Dorvee* nor *Jenkins* involved the *production* of child pornography. Dorvee pled guilty to a single count of distribution of child pornography, *see Dorvee*, 616 F.3d at 176, and a jury convicted Jenkins of one count of possession of child pornography and one count of transportation of child pornography, *see Jenkins*, 854 F.3d at 183–84. Both received sentences at or near the statutory maximum. *See Dorvee*, 616 F.3d at 176; *Jenkins*, 854 F.3d at 184. And neither had *any* contact with children—virtually or otherwise.[4] *See Dorvee*, 616 F.3d at 176;

---

[4] Although Dorvee did speak with and send pornographic videos to an undercover officer *posing* as a child, the undercover officer had initiated the contact, and we emphasized that Dorvee was "simply too passive, shy, socially anxious, retiring, introverted, submissive, unsure of himself and distrustful to push or develop a relationship with any other person, child or adult, unless the other person took the lead." *Dorvee*, 616 F.3d at 177 (internal quotation marks omitted). And Jenkins merely "owned a collection of child pornography and brought it across the U.S.-Canada border on the way to a family vacation for his personal viewing." *Jenkins*, 854 F.3d at 184. He "did not produce or distribute child pornography and did not contact or attempt to contact a minor." *Id*.

*Jenkins*, 854 F.3d at 184. Under those narrow circumstances—*i.e.*, where the defendant was not involved in production of child pornography and had no contact with children—we noted that a straightforward application of the sentencing Guidelines "can lead to unreasonable sentences that are inconsistent with what [18 U.S.C.] § 3553 requires." *Dorvee*, 616 F.3d at 184. It is in this limited context that we warned that strict adherence to the Guidelines could result in "virtually no distinction between the sentences for . . . the most" and least serious offenders because many of the sentencing enhancements in U.S.S.G. § 2G2.2 "are all but inherent to the crime of conviction." *Id.* at 186–87.

Muzio is undoubtedly a more "dangerous" offender than Dorvee or Jenkins. *Id*. at 187. Child pornography production offenses are extremely serious and ordinarily warrant significantly harsher punishment than possession or even distribution offenses. *See Paroline v. United States*, 572 U.S. 434, 439–40 (2014) ("The demand for child pornography harms children in part because it drives production, which involves child abuse. The harms caused by child pornography, however, are still more extensive because child pornography is a permanent record of the depicted child's abuse, and the harm to the child is exacerbated by its circulation.") (cleaned up). Muzio's conduct also involved manipulating many

victims into repeated acts of producing child pornography. The concerns articulated in *Dorvee* and *Jenkins* are therefore inapplicable here, where the defendant was involved in the production of child pornography and had direct contact with child victims.

The dissent repeatedly emphasizes that Muzio's conduct did not involve *physical* contact.[5] But this fails to appreciate the fact that some offenses that do not involve physical contact may nonetheless inflict very real and even more severe harm on victims.[6] We thus decline to hold, as a matter of law, that non-contact production of child pornography is categorically less harmful than sexual abuse involving physical contact. Similarly, the dissent's concerns with the Guidelines

---

[5] *See, e.g.*, Dissent at 1 (emphasizing that Muzio "had no physical contact with" and did not himself film his victims); *id.* at 2 (noting that Muzio "was never within 100 miles" of his victims); *id.* at 14–15 (characterizing child pornography producers who were "physically present with their victims" as more "serious" offenders than those who were not); *id.* at 18 ("Muzio's conduct was substantially less severe than a typical production offender's because he never touched, or tried to touch, any of his victims"); *id.* at 22 (describing Muzio's offenses as "closer to the conduct of defendants in distribution cases," which "typically do not include sexual contact," than to "the conduct of a bad production offender"); *id.* at 22–23 (asserting a lessened need to protect the public in sentencing "exclusively an *online* predator").

[6] *See, e.g.*, *Paroline*, 572 U.S. at 439–40; *id.* at 472 (Sotomayor, J., dissenting) ("The traffic in images depicting a child's sexual abuse . . . poses an even greater threat to the child victim than does sexual abuse or prostitution because the victim must go through life knowing that the recording is circulating within the mass distribution system for child pornography[,] . . . [causing] continuing harm by haunting the child in years to come.") (internal quotation marks omitted); Ateret Gewirtz-Meydana et al., *The Complex Experience of Child Pornography Survivors*, 80 Child Abuse & Neglect 238, 244 (2018) ("Some survivors distinguished between unfilmed child sexual abuse, and child pornography. According to them, every abuse eventually ends, yet with child pornography, when images circulate, it feels as if the abuse is constant and continuing.").

and so-called "barbaric" sentences are ultimately matters of policy on which we must defer to the judgments of Congress and the Commission. *Cf. United States v. Mantanes*, 632 F.3d 372, 377 (7th Cir. 2011) ("[I]t is ultimately for Congress and the Commission to consider . . . concerns [regarding disparities in child pornography sentences]. Having said that, however, those concerns can certainly be taken into account by district judges when exercising their sentencing discretion under the now advisory guidelines.").

In any event, the district court did not impose a Guidelines sentence and instead based Muzio's sentence on the applicable mandatory minimums prescribed by Congress. The court concluded that the Guidelines sentence was "greater than necessary to meet the goals of sentencing" simply by virtue of its duration. App'x at 150. It instead imposed consecutive mandatory-minimum sentences for each child-exploitation count and a third consecutive mandatory-minimum sentence covering all the distribution and possession counts. This was clearly reasonable. Put simply, the district court was not required to give Muzio what would amount to free passes on the second child-exploitation count and the distribution and possession counts. *See Broxmeyer*, 699 F.3d at 290.

Muzio also challenges the district court's balancing of the sentencing factors set forth in 18 U.S.C. § 3553(a). He argues that the district court failed to give "adequate" weight to a number of allegedly mitigating factors, including his (1) mental-health and substance-abuse issues, (2) lack of criminal history, (3) family and community ties, (4) remorse, and (5) supposed "amenability" to supervised release given the nature of his offense and his good behavior while on pretrial release. Appellant's Br. at 23–25. But the district court considered each of these arguments at sentencing and reasonably concluded that the mitigating factors were outweighed by the "barbaric" nature of Muzio's conduct. App'x at 162. It acted well within its discretion in doing so. *See, e.g.*, *Rivernider*, 828 F.3d at 111.

B.    <u>Procedural Reasonableness</u>

Finally, Muzio argues that his sentence was procedurally unreasonable because the district court incorrectly calculated the applicable Guidelines range. Because Muzio did not object below to the district court's Guidelines calculations, we review this challenge for plain error. *See United States v. Villafuerte*, 502 F.3d 204, 207–08 (2d Cir. 2007).

Each crime to which Muzio pled guilty carried a statutory maximum sentence of less than life, so Muzio's Guidelines range was equal to the combined

12

statutory maximum. *See* U.S.S.G. § 5G1.2(b). The PSR and the district court both concluded that this number was 6,000 months, or 500 years. But in actuality, the combined statutory maximum is 2,400 months, or 200 years.

Muzio argues that this error rendered it "impossible [for the district court] to formulate a proper sentence." Appellant's Supp. Letter at 2. For practical purposes, however, a 200-year sentence and a 500-year sentence are both life sentences, and the district court treated the Guidelines range as such. *Cf. United States v. Betcher*, 534 F.3d 820, 827–28 (8th Cir. 2008) (noting that a 750-year sentence is "for practical purposes . . . a life sentence, and that is how we view it"). Moreover, the district court expressly disclaimed reliance on the Guidelines in formulating its sentence. We thus conclude that the Guidelines calculation error did not "seriously affect[] the fairness, integrity, or public reputation of the [sentencing]," and we reject Muzio's challenge to his sentence as procedurally unreasonable. *Villafuerte*, 502 F.3d at 209 (internal quotation marks omitted).

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

Stefan R. Underhill, *District Judge*, dissenting:

George Muzio produced child pornography by tricking minor girls into sexting with him by posing as a teenage boy with cancer. He engaged in no violence and, indeed, had no physical contact with any of the girls. There is no evidence that he has ever had inappropriate contact with any minor. Muzio did not film any of the girls, even remotely. None of the images or videos, as disturbing as they are, involves sex acts with another person. Nevertheless, as a first-time offender, Muzio was sentenced to 420 months—35 years—in prison, a sentence that is more than 12 years longer than the nationwide average sentence for production of child pornography. In my view, that sentence did not meaningfully distinguish Muzio from more culpable child pornography producers, is shockingly high, and is therefore substantively unreasonable. Accordingly, I respectfully dissent.

## I. BACKGROUND

Muzio pled guilty to a nine-count indictment that charged him with producing (two counts), distributing (six counts), and possessing (one count) child pornography. All of Muzio's charged conduct took place over the internet

using his computer or through his iPhone.[1]  He was never within 100 miles of his victims; he used deceit to convince the victims to film or photograph themselves and send him the product.  He did not touch or film, remotely or otherwise, any victim.

The two production charges (brought as sexual exploitation of a child charges) are based upon Muzio's extensive electronic contact with two particular victims (Victims 1 and 2).[2]  Muzio used his iPhone and an app called Kik Messenger to communicate with Victims 1 and 2.  Between August 2014 and March 2015, Muzio and Victim 1—who lived in Montana—exchanged over 2,000 text messages.  Victim 1 was eleven years old and Muzio was 33.  Muzio represented himself to be a teenage boy.  Muzio manipulated Victim 1 by telling her that he loved her and that they would get married one day.  Muzio solicited pornographic photographs and videos from Victim 1 and often instructed her in graphic terms what he wanted her to do in those photographs and videos.

---

[1] In a related incident—which the district judge considered at sentencing—Muzio used a home video recorder to record from a window in his own residence his neighbors' adolescent daughter walking in and out of her house (*i.e.*, fully clothed and in public).

[2] As the majority points out, Muzio likely engaged in similar conduct with more than seventy-five young girls.

Muzio also sent Victim 1, on at least one occasion, a photograph of his erect penis.

Between October 2015 and January 2016, Muzio and Victim 2—who lived in Georgia—exchanged over 4,700 text messages. Victim 2 was 13, and Muzio was 34. Again, Muzio sent Victim 2 incredibly graphic messages, manipulated Victim 2, and solicited pornographic photographs and videos that Muzio choreographed.

On at least two occasions, Muzio traded images and videos of child pornography with other users on Kik. Muzio shared the online contact information of Victim 1 and another young girl with the other users with whom he was trading child pornography. Muzio gave those other users advice about how to speak to those young girls. He said, for instance: "Don't come off strong with this girl." PSR at ¶ 52.

Finally, when going through seized materials (DVDs), federal agents discovered hundreds of home video clips depicting a teenage girl that were taken over a two- to three-year period. The videos were taken from the second floor of Muzio's house and featured Muzio's neighbors' daughter (when she was

between fourteen and sixteen years old) exiting and entering her house; the videos focused on the girl's breasts and buttocks.

In his written plea agreement with the government, Muzio agreed not to appeal a sentence of incarceration that did not exceed 365 months—the top of the Guidelines range Muzio would have faced for a single count of sexual exploitation of a minor with the enhancements applicable to his conduct (offense level 40 and criminal history category I).  District Judge Mae A. D'Agostino sentenced Muzio to 420 months' imprisonment and lifetime supervised release. The government had submitted that the most relevant and important section 3553(a) factor was the need "to protect the public from further crimes of the defendant."  App'x at 139.  I quote several portions of the sentencing transcript to highlight (what I believe to be) the reasons animating the district judge's sentence.

Before reading excerpts of text messages between Muzio and Victims 1 and 2, Judge D'Agostino explained:

> We are not talking about a few isolated discussions with children. That would be bad enough.  But we're talking about thousands and thousands of conversations with children all throughout the United States and throughout the world.  You knew just how to prey on these victims.  You knew just what to say when they would tell you that

4

they didn't want to do these things. Any reviewing court has to understand that you were a predator in every sense of the word.

App'x at 146. Judge D'Agostino continued:

> [Although] the defendant portrayed himself as a stay-at-home father, actively involved in his children's lives and activities, . . . he was acting as an online sexual predator . . . .
>
> . . .
>
> The defendant not only acted as an online sexual predator, he perpetrated [*sic*] the online child pornography epidemic by distributing nude and pornographic images and videos of minor females . . . whom he introduced to at least one other individual. He also shared the female's [*sic*] social media user names with the individual so he could also attempt to induce the minors to produce further sexually explicit material of themselves.

App'x at 150–51. Judge D'Agostino also found important that Muzio

> videotaped and photographed his neighbor's young minor daughter over a number of years, zooming in on her buttocks and chest as she innocently walked to and from school, her home and her car.
>
> . . .
>
> This conduct demonstrates that the defendant poses a risk not only to minors online but to minors in the community as well.

App'x at 151–52.

Judge D'Agostino discounted the mitigating effects of both Muzio's mental health issues and his alleged history of childhood sexual abuse. The Judge

5

explained that "the only reason to impose a non-guideline sentence in this case is the fact that the guideline range calls for a sentence of 500 years." App'x at 153.[3] No "other mitigating factors [] would warrant a sentence outside of the guideline range." *Id.*

Judge D'Agostino noted that her sentence would comply with 18 U.S.C. § 3553(a) because it would

> reflect the seriousness of the offense, and this offense was egregiously serious; it needs to promote respect for the law; it needs to deter further criminal conduct; and it most definitely needs to protect the public from further crimes from this predator.

App'x at 153. This appeal followed.

## II. DISCUSSION

Sentencing defendants who have committed child pornography offenses is extraordinarily difficult, as is reviewing those sentences for substantive reasonableness. The offense conduct constitutes a serious breach of fundamental societal norms and leaves even seasoned judges disquieted. The conduct of the defendant, and the impact on the victims, is often horrific—especially with defendants who have produced child pornography. These cases instill a sense

---

[3] As the Court explains, the correct Guidelines range was 2,400 months, but the Guidelines range relied on by all at the time of sentencing was "life, or 6,000 months." App'x at 136. I agree with the Court's holding that that discrepancy does not provide a basis for reversal.

6

that the defendants deserve what they get, no matter how long the sentences might be. But, like all offenses, child pornography offenses vary in their seriousness. Even the conduct of producers of child pornography occurs along a spectrum. That spectrum calls for a concomitant range in the seriousness of the sentences imposed, for we have a statutory duty to impose—or affirm—only sentences that are "sufficient, but not greater than necessary," to serve the purposes of sentencing, even in child pornography cases. I do not believe the sentence imposed on Muzio was the shortest sentence "sufficient" to serve those purposes. Indeed, although his conduct places him among the least serious production offenders, his sentence was dramatically above the national average for production offenders. Because I believe Muzio's sentence was shockingly high, and thus substantively unreasonable, I would vacate and remand.

A.    Review for Substantive Reasonableness

Substantive review of sentences "is intended to 'provide a backstop' against sentences that are 'shockingly high, shockingly low, or otherwise unsupportable as a matter of law.'" *United States v. Dorvee*, 616 F.3d 174, 183 (2d Cir. 2010) (quoting *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009)). The

factors set forth in 18 U.S.C. § 3553(a) govern the Second Circuit's review for substantive unreasonableness. *See United States v. Jenkins*, 854 F.3d 181, 187 (2d Cir. 2017). This Court must evaluate whether "each sentencing factor, 'as explained by the district court, can bear the weight assigned it under the totality of the circumstances in the case.'" *Id.* at 188 (quoting *United States v. Cavera*, 550 F.3d 180, 191 (2d Cir. 2008) (en banc)).

It is not empirically surprising that this Court holds that Muzio's sentence is substantively reasonable. There are almost no decisions, here or in other Circuits, reversing a sentence imposed for production of child pornography on substantive unreasonableness grounds. In the 124 appeals in which this Court has cited 18 U.S.C. § 2251 (not all of which involved claims of substantive unreasonableness), the Court has reversed a sentence for substantive unreasonableness exactly once, and that reversal was short-lived.

In *United States v. Sawyer*, 672 F. App'x 63 (2d Cir. 2016) ("*Sawyer I*"), the Court vacated and remanded a 30-year sentence imposed by Judge D'Agostino on a producer of child pornography who had engaged in inappropriate physical contact with a four-year-old and a six-year-old. The decision was based, in part, on Judge D'Agostino's "overreliance on Sawyer's danger to the community." *Id.*

8

at 67. When reviewing the 25-year sentence imposed following remand, the Court again initially vacated and remanded for failure to comply with the mandate. *United States v. Sawyer*, 892 F.3d 558, 564 (2d Cir. 2018). Five weeks later, the Court withdrew that decision, *United States v. Sawyer*, 2018 WL 5116340, at *1 (2d Cir. July 26, 2018), and issued an order affirming the judgment, *United States v. Sawyer*, 2018 WL 5117293, at *1 (2d Cir. July 30, 2018). Several months later, this Court issued a published opinion that rejected the substantive reasonableness appeal and noted that: "The sentence is barbaric without being all that unusual." *United States v. Sawyer*, 907 F.3d 121, 126 (2d Cir. 2018) ("*Sawyer II*").

In a second case, the Court suggested, without holding, that it had concerns about the substantive reasonableness of a sentence imposed on a child pornography producer. It remanded an extremely lengthy sentence "to ensure that the sentence is not based on a clearly erroneous understanding of the facts." *United States v. Brown*, 826 F.3d 51, 53 (2d Cir. 2016). About a month later, the panel vacated its opinion and judgment. *See* Order, *United States v. Brown*, No. 1:12-cr-145 (GLS) (N.D.N.Y.), Doc. No. 57. Ultimately, the Second Circuit

affirmed Brown's 720-month sentence as substantively reasonable. *United States v. Brown*, 843 F.3d 74 (2d Cir. 2016).

The Second Circuit is not unique in its reluctance to reverse child pornography production sentences as substantively unreasonable. I am aware of only two such decisions nationwide. In *United States v. Aleo*, 681 F.3d 290, 294, 299–302 (6th Cir. 2012), the Sixth Circuit reversed as substantively unreasonable a 60-year sentence imposed on a grandfather who made a hidden-camera video of him sexually touching his five-year-old granddaughter while drying her off after a bath. And in *United States v. Killen*, 729 F. App'x 703, 717–18 (11th Cir. 2018), the Eleventh Circuit reversed a 139-year sentence as substantively unreasonable because the district judge refused to take into account unwarranted disparities in sentencing.

The creation and trafficking of child pornography is a horrible crime because it perpetuates and elongates the suffering of some of the most innocent in our society. *See Paroline v. United States*, 572 U.S. 434, 439–40 (2014). Few crimes cut so deeply against fundamental societal norms. But that should not mean that any sentence within the statutory range is immune from review. As former Chief Judge Dennis G. Jacobs noted, in dissent: "If any sentence between

10

the [statutory] minimum and maximum is substantively reasonable as a matter of law unless the offense borders on innocence itself, there is no such thing as substantive unreasonableness in this area." *United States v. Broxmeyer*, 699 F.3d 265, 304 (2d Cir. 2012) (Jacobs, C.J., dissenting); *see Brown*, 843 F.3d at 85 (Sack, J., concurring) ("[T]he extreme nature of [child pornography] offenses compels . . . particularly meticulous scrutiny."). As discussed below, the Sentencing Guidelines provide no means for distinguishing among producers of child pornography, so the task falls to substantive reasonableness review.

**B.      The Sentencing Guidelines Offer No Help**

The child pornography production guideline, U.S.S.G. § 2G2.1, shares many of the same flaws identified by this Court when it reviewed the child pornography distribution guideline, U.S.S.G. § 2G2.2. *See Dorvee*, 616 F.3d at 184–88. I need not emphasize those flaws here,[4] for the thing speaks for itself:

---

[4] In my view, although perhaps not as egregiously, section 2G2.1 suffers from some of the same deficiencies as section 2G2.2 because, rather than being a product of the Commission's empirical study, Congress has driven amendments to that guideline and some enhancements are applicable in so many cases that the guideline does not help distinguish between levels of culpability among defendants. *See, e.g.*, U.S. Sentencing Comm'n, *Federal Child Pornography Offenses* 249 (2012) (the "2012 Commission Report"), https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf ("Over the years, the Commission increased the base offense level [under 2G2.1] and added additional

Muzio's Guidelines range, for a non-violent, first-time offender who had no physical contact with any victim, was calculated to be 6,000 months. We learned on appeal that it was actually "only" 2,400 months, but there is no practical difference between 500 years in prison and 200 years in prison.

The Guidelines are an exceedingly blunt tool in the child pornography context. They do not call for consideration of the characteristics of the defendant and do not meaningfully account for differences in conduct committed by persons who violated the same statute. It is axiomatic that punishment should be proportional to an offense. *See Graham v. Florida*, 560 U.S. 48, 59 (2010); *see also*

enhancements, usually as a result of congressional directives."); U.S. Sentencing Comm'n, *Use of Guidelines and Specific Offense Characteristics: Guideline Calculation Based, Fiscal Year 2018* 44, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/guideline-application-frequencies/2018/Use_of_SOC_Guideline_Based.pdf (showing that 90.4 percent of sentences under section 2G2.1 included a two- or four-point enhancement based on the victim's age; that 47.6 percent of those sentences included a two-point enhancement because the offense involved a sex act or sexual contact; and that 39 percent of those sentences included a two-level enhancement because the victim was in the defendant's custody, care, or control); *Brown*, 843 F.3d at 89 (Pooler, J., dissenting) ("[M]uch of the *Dorvee* court's criticism of the child pornography guidelines applies to the guidelines for production offenses as well."); *United States v. Grigsby*, 749 F.3d 908, 911 (10th Cir. 2014) ("Defendant may be correct when he says the child pornography production guideline, § 2G2.1, suffers from the same apparent defect as the distribution guideline, § 2G2.2.") (citing 2012 Commission Report at 247); *United States v. Zauner*, 688 F.3d 426, 431 (8th Cir. 2012) (Bright, J., concurring); *United States v. Price*, 2012 WL 966971, at *11 (C.D. Ill. Mar. 21, 2012) (explaining that section 2G2.1 "presents some of the same problems" as section 2G2.2), *aff'd*, 775 F.3d 828, 840–41 (7th Cir. 2014); *United States v. Jacob*, 631 F. Supp. 2d 1099, 1115 (N.D. Iowa 2009); *United States v. Krueger*, 2009 WL 4164122, at *3 (E.D. Wis. 2009); *but see United States v. Murphy*, 792 F. App'x 232, 235 (3d Cir. 2019).

*Dorvee*, 616 F.3d at 187 ("[C]ourts must guard against unwarranted similarities among sentences for defendants who have been found guilty of dissimilar conduct.") (citing *Gall v. United States*, 552 U.S. 38, 55 (2007)). Achieving such proportionality is one major reason that the Sentencing Guidelines exist. *See* 28 U.S.C. § 991(b)(1)(B) (articulating that a purpose of the Sentencing Commission is to "avoid[] unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct"); U.S.S.G. ch. 1, pt. A, at § 1.3 (noting that, in instituting Guidelines, "Congress sought proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of differing severity"); 18 U.S.C. § 3553(a)(6).

The fact that the sentence imposed in this case falls well below the applicable Guidelines range does not suggest that the sentence is substantively reasonable. The Second Circuit has noted that "the amount by which a sentence deviates from the applicable Guidelines range is not the measure of how 'reasonable' a sentence is" and that, even when a sentence falls "relatively far below" the Guidelines range, an "individualized application of the statutory sentencing factors" is still required. *See Dorvee*, 616 F.3d at 184 (citing *Gall*, 552

13

U.S. at 46–47).  Even Judge D'Agostino implicitly recognized the uselessness of the Guidelines range in this case when she remarked that "the only reason to impose a non-guideline sentence in this case is the fact that the guideline range calls for a sentence of 500 years."  App'x at 153.

The decision to affirm Muzio's sentence actually creates the very sentencing disparity that the Guidelines were enacted to dispel.  Statistically, Muzio's conduct places him in the *least serious 10 percent* of production defendants nationwide.  Indeed, according to the U.S. Sentencing Commission, in 2010 (the most recent year for which detailed child pornography offense statistics are available), 74 percent of "production offenders were physically present with their victims or remotely aided and abetted another adult offender in the commission of a sexual contact offense against a minor victim."  *See* U.S. Sentencing Comm'n, *Federal Child Pornography Offenses* 263 (2012) (the "2012 Commission Report"), https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf.  A further 15.5 percent of production offenders were "physically present with their victims" but did not touch them or

14

aid another in touching them.  *See id.*  Only 10.5 percent of production offenders neither were physically present nor touched the minor.  *See id.*

That last category—"offenders who solicited still images of self-produced child pornography from minors via email or text or who recorded sexually explicit conduct of minors who appeared remotely via webcam"—describes Muzio.  *See id.* at 263 n.56.  But, even though Muzio's conduct would have placed him in the least serious 10 percent of production offenders for the fiscal year 2010, his sentence was *153 months longer* than the *average sentence* for all production offenders in 2010.  *See* 2012 Commission Report at 253 (reporting average sentence for production offenders as 267.1 months).  That disparity shocks the conscience.

Similarly, in 2019, the mean sentence for a sexual abuser[5] under the Guidelines was 206 months.  *See* U.S. Sentencing Comm'n, *2019 Sourcebook of Federal Sentencing Statistics* tbl.15 (the "2019 Sourcebook"),

https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-

---

[5] The category "sexual abuse" includes: criminal sexual abuse, sexual abuse of a minor, sexual abuse of a ward, abusive sexual contact, transportation of a minor for sex, sex trafficking of children, sex trafficking of adults by force, fraud or coercion, child pornography production, and child exploitation enterprises.  It includes "offenders sentenced under USSG §2G1.1 who received a Base Offense Level of 34, and all offenders sentenced under USSG §§2A3.1, 2A3.2, 2A3.3, 2A3.4, 2G1.2 (deleted), 2G1.3, 2G2.1, 2G2.3, and 2G2.6."  *See* 2019 Sourcebook at 214.

reports-and-sourcebooks/2019/2019-Annual-Report-and-Sourcebook.pdf.

Indeed, the mean sentence for a sexual abuser in *criminal history category VI* was

272 months. *See id.* at tbl.27. By any statistical metric, Muzio was sentenced

much too harshly.

Taken as a whole, the Guidelines *themselves* indicate that Muzio's sentence

is egregiously long: The Guidelines recommend that many defendants who

subject children to repeated, inappropriate sexual contact should spend less than

35 years in prison. For instance, under the Guidelines, a first-time offender "who

intentionally seeks out and contacts a twelve[-]year-old on the internet,

convinces the child to meet and to cross state lines for the meeting, and then

engages in repeated sex with the child," would be subject to a Guidelines range

of 151 to 188 months' imprisonment. *See Dorvee*, 616 F.3d at 187 & n.11; *Sawyer I*,

672 F. App'x at 66 (citing *Dorvee*). Similarly, by my calculation, a first-time

offender who, through the internet, entices a 14-year-old into crossing state lines

under false pretenses, sells her into the sex trade, and profits from her

commercial sex acts would be subject to the same Guidelines range of 151 to 188

months' imprisonment.[6] In both of the above situations, the Guidelines range

---

[6] This hypothetical individual has been convicted of sex trafficking under 18 U.S.C. § 1591(b)(2). Under U.S.S.G. § 2G1.3(a)(2), the defendant's base offense level is 30. Further, he

would be 108 to 135 months' imprisonment if the hypothetical defendants pled guilty and earned three points off for acceptance of responsibility. *See* U.S.S.G. § 3E1.1.

To the extent that the Guidelines and statistics collected by the Sentencing Commission provide any meaningful guidance regarding what sentence to impose, they suggest that Muzio's sentence was a shocking aberration.

C.    The Section 3553(a) Factors Do Not Support Muzio's Sentence

The ultimate touchstone for all federal sentencing is 18 U.S.C. § 3553(a). That statute requires that the "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. Thus, the sentence imposed must:

- reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense;

- afford adequate deterrence to criminal conduct;

- protect the public from further crimes of the defendant; and

---

has qualified for the misrepresentation enhancement under § 2G1.3(b)(2) (2 levels) and the use-of-a-computer enhancement under § 2G1.3(b)(3) (2 levels). Thus, the defendant's total offense level is 34, which, for a defendant in criminal history category I, yields a Guidelines range of 151 to 188 months' imprisonment.

- provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Muzio's sentence in this case is substantively unreasonable because it is shockingly high, and the district judge's heavy reliance on one of the section 3553(a) factors—"protection of the public"—cannot bear the weight she assigned it. Although Muzio was convicted of two production offenses, Muzio's conduct was substantially less severe than a typical production offender's because he never touched, or tried to touch, any of his victims—he was never even in the same room with one. Still, Judge D'Agostino sentenced Muzio as if he were among the worst-of-the-worst child pornography offenders.[7] All of Muzio's criminal conduct took place in the digital world. No matter what prison term he serves, his computer and phone use will be monitored for the rest of his life— and that is certainly appropriate. In this case, 35 years is—by far—a greater-than-necessary term of imprisonment to achieve the purposes of sentencing.

_____

[7] Importantly, at oral argument, Assistant United States Attorney Paul Silver acknowledged that Muzio was not among the worst-of-the-worst child pornography defendants. AUSA Silver described a "spectrum" of child pornography cases with simple possession ("the least serious") at one end and "hands-on abuse of a child" at the other ("highest end"). Oral Arg. at 11:08–11:35. AUSA Silver explained that production cases fall "somewhat right in the middle" and that this case fell into the upper half of the production cases. *Id.* at 11:35–11:50.

In too many other cases to count, child pornography defendants who rape, molest, or torture children get meaningfully shorter sentences than Muzio did in this case. *See, e.g.*, *Brown*, 843 F.3d at 92 (Pooler, J., dissenting) (citing *United States v. Gilmore*, 599 F.3d 160, 162 (2d Cir. 2010) (affirming 30-year sentence for defendant who repeatedly raped eight-year-old daughter); *United States v. Swackhammer*, 400 F. App'x 615, 616 (2d Cir. 2010) (affirming 168-month sentence for defendant who repeatedly molested children); *United States v. Irey*, 612 F.3d 1160, 1166 (11th Cir. 2010) (en banc) (determining that 30-year sentence (statutory maximum) should be imposed on defendant who raped, sodomized, and sexually tortured fifty or more little girls, some as young as four); *United States v. Castro-Valenzuela*, 304 F. App'x 986, 988 (3d Cir. 2008) (affirming 220-month sentence for defendant who recorded himself violently sexually assaulting his girlfriend's seven-year-old niece)); *United States v. Batchu*, 724 F.3d 1, 3, 14 (1st Cir. 2013) (affirming 365-month sentence for defendant—a "skilled and apparently undeterrable predator" and "relentless and highly dangerous child molester"—who travelled all over the country to sexually exploit fifteen-year-old and violated court-issued restraining orders and state-level prosecutions to do so); *United States v. Rudow*, 373 F. App'x 298, 299–300 (3d Cir. 2010) (affirming

326-month sentence when defendant "made several videos of himself sexually abusing his fourteen-year-old daughter" and had six prior felony convictions, putting him in criminal history category VI).

Of course, I acknowledge that this Court has affirmed some extremely long sentences for child pornography defendants convicted—as Muzio was—of production under 18 U.S.C. § 2251(a) and (e). *See, e.g.*, *Broxmeyer*, 699 F.3d at 288–97 (30 years); *United States v. Levy*, 385 F. App'x 20, 24–25 (2d Cir. 2010) (30 years); *United States v. Oehne*, 698 F.3d 119, 125–26 (2d Cir. 2012) (45 years); *United States v. Pattee*, 820 F.3d 496, 512–13 (2d Cir. 2016) (47 years); *Brown*, 843 F.3d at 82–84 (60 years); *United States v. Rafferty*, 529 F. App'x 10, 13–14 (2d Cir. 2013) (60 years).

A signature feature of those cases is the defendant's physical proximity to the victims. In all the above-cited cases, for instance, the defendant either had physical/sexual contact with his victims or recorded/photographed them while in the same room. This Court has repeatedly emphasized that physical contact and proximity—and the *attempt* to have physical contact—are extremely important factors in determining the substantive reasonableness of child pornography sentences. *See, e.g.*, *Dorvee*, 616 F.3d at 184; *Jenkins*, 854 F.3d at 191 ("Whether a

child pornography offender has had or has attempted to have contact with children is an important distinction."). In many such cases, too, the defendant is in a position of trust with respect to the victim (a family member or a coach, for instance) and abuses that trust.

Muzio's conduct was, of course, abhorrent. Crucially, however, he never had—or even *attempted* to have—physical contact with any minor. Indeed, Muzio was never in the same room as a minor victim, and all the relevant evidence suggests that he never would have been. The minors whom Muzio contacted were strangers. Muzio raised two young boys and was a Little League coach for boys between the ages of five and fifteen, but there are no allegations of impropriety against him in those roles. Online, Muzio initiated computer contact with young girls with absolutely no regard for where those girls were located geographically. Muzio never met any of those girls. (Indeed, Muzio's anxiety made it difficult for him even to leave his own parents' house.[8]) In addition,

---

[8] A psychologist's evaluation indicated that Muzio's significant anxiety "likely affects his employment outside of the house and his willingness to consistently leave the house for other than family activities." App'x at 128–29.

despite the fact that Muzio surreptitiously recorded the young girl who lived *next door* for years, Muzio never attempted to contact her inappropriately.[9]

Muzio's conduct is closer to the conduct of defendants in distribution cases than to the conduct of a bad production offender (*e.g.,* a child rapist). In distribution and possession cases, which typically do not include sexual contact, the Second Circuit has vacated as substantively unreasonable several sentences much shorter than the one in this case. *See Dorvee*, 616 F.3d at 176 (20 years); *Jenkins*, 854 F.3d at 184 (225 months); *see also United States v. DiMartino*, 797 F. App'x 27, 30 (2d Cir. 2019) (affirming sentence but acknowledging that the sentences in *Dorvee* and *Jenkins* were "shockingly high"). Indeed, in my view, defendants in some distribution cases—including *Dorvee*, in which the defendant was arrested when he showed up to a meeting with a (fake) 14-year-old boy—are closer to having "sexual contact" with a minor than was Muzio. *See Dorvee*, 616 F.3d at 176.

Despite all this, in sentencing Muzio, the district judge focused on the need to protect the public. *See* 18 U.S.C. § 3553(a)(2)(C). That sentencing factor cannot bear the weight assigned to it. *Jenkins*, 854 F.3d at 188 (citing *Cavera*, 550 F.3d at

---

[9] Muzio sent the girl one Facebook message "inquiring about her new dog." PSR at ¶ 69. The neighbor's daughter did not respond, and Muzio apparently sent no further messages.

191). In *Sawyer I* and *Dorvee*, this Court remarked that the sentences in those cases could not "be justified by public protection, given that a defendant who repeatedly has sex with a child would face a far more lenient sentence." *Sawyer I*, 672 F. App'x at 66 (citing *Dorvee*, 616 F.3d at 187). As I have noted above, Muzio never touched a young girl, and, in my view, he was not a threat to do so. Muzio may have been a "predator," but he was exclusively an *online* predator. *Cf. Dorvee*, 616 F.3d at 183. For that reason alone, his sentence is substantively unreasonable.

Ultimately, Congress has directed that sentences should be "sufficient, but not greater than necessary" to serve the purposes of sentencing. The sentence imposed in this case is much "greater than necessary" to serve the purposes of sentencing. For instance, the sentence goes far beyond what would be necessary for "adequate deterrence." 18 U.S.C. § 3553(a)(2)(B). There is simply no basis to believe that a sentence of 35 years is necessary to deter Muzio (or anyone else) from committing this crime ever again. No matter what term of incarceration was imposed in this case, Muzio was likely to be subject to a lifetime term of supervised release during which his internet use would be constantly monitored. At oral argument, Muzio's lawyer conceded that Muzio was not challenging the

23

lifetime term of supervised release. Thus, no matter the term of incarceration, Muzio will *always* be subject to re-incarceration if he uses the internet for improper purposes. Further, because of Muzio's age upon release[10] and his potential participation in the BOP's Sex Offender Treatment Program,[11] Muzio would be *even less* of a threat to recidivate. The difference between the mandatory minimum incarceration in this case (fifteen years) and the 35-year sentence imposed simply cannot be justified by specific deterrence. For all the reasons identified above, I also do not believe that general deterrence can justify Muzio's sentence.

Moreover, the sentence in this case does not "promote respect for the law." 18 U.S.C. § 3553(a)(2)(A). Although it affirmed the sentence, this Court recently remarked that a 25-year sentence imposed on a child pornography defendant who had actually made inappropriate contact with a four-year-old and a six-year-old[12] was "barbaric." *See Sawyer II*, 907 F.3d at 126. If a 25-year sentence for

---

[10] *See United States v. Craig*, 703 F.3d 1001, 1003 (7th Cir. 2012) (Posner, J., concurring) ("Only 1.1 percent of perpetrators of all forms of crime against children are between 70 and 75 years old and 1.3 percent between 60 and 69.") (citing government study).

[11] *See United States v. Mudd*, 681 F. App'x 425, 431–32 (6th Cir. 2017) (Merritt, J., concurring) (citing a government study that concludes: "[T]he evidence suggests that [] treatment for sex offenders—particularly cognitive-behavioral/relapse-prevention approaches— can produce reductions in both sexual and nonsexual recidivism").

[12] It is clear that the defendant in *Sawyer* touched his victims inappropriately. In *Sawyer I*, this Court noted a disagreement below regarding whether the defendant had touched the

24

a defendant who actually touched a four-year-old and a six-year-old was "barbaric," how can the 35-year sentence in this case be anything but barbaric?

No matter how commonly they are imposed, Courts of Appeals should not be in the business of affirming barbaric sentences. Any barbaric sentence, almost by definition, shocks the conscience and must therefore be substantively unreasonable. Indeed, the Supreme Court has made clear that the Eighth Amendment's ban on cruel and unusual punishments "prohibits the imposition of inherently barbaric punishments under all circumstances." *Graham*, 560 U.S. at 59 (citation omitted). Put differently, a barbaric sentence must, necessarily, be a sentence greater than necessary to comply with the purposes of sentencing. *See* 18 U.S.C. § 3553(a). Affirming barbaric sentences does not promote respect for the law.

As discussed above, the fact that certain child rapists and child sex traffickers are likely under the Guidelines to receive more lenient sentences than

---

victims' vaginas. *See Sawyer I*, 672 F. App'x at 66 n.3. This Court explained, though, that the resolution of that disagreement had been unnecessary because the relevant enhancement under the Guidelines would have applied even if the defendant did not technically touch the victims' vaginas but, rather, their "inner thigh." *See id.* (citing U.S.S.G. § 2G2.1(b)(2)(A); 18 U.S.C. § 2246(3)). This Court later made clear that Sawyer had "touch[ed] [his victims] in the process" of photographing them. *See Sawyer*, 892 F.3d at 561; *Sawyer II*, 907 F.3d at 124. Thus, although Sawyer may not have touched his victims' vaginas, there can be no doubt that Sawyer touched them inappropriately.

Muzio's also does not promote respect for the law. Relatedly, the severity of Muzio's sentence depended, in many ways, on the court in which he was prosecuted. That is, Muzio might well have been subject to lesser penalties for the same conduct had he been prosecuted under the laws of his own state. In New York, an individual who produces child pornography in the way that Muzio did has committed the crime of "promoting an obscene sexual performance by a child." *See* N.Y. Penal Law § 263.10. That crime is a class D felony, which is punishable by a *maximum* of seven years' imprisonment. *See id.* at § 70.00(2)(d). In addition, in New York, an individual who knowingly possesses "an obscene sexual performance by a child" has committed a class E felony, for which the maximum punishment is four years. *See id.* at § 263.11 (possession); *id.* at § 70.00(2)(e) (class E felony punishment). *See also Brown*, 843 F.3d at 88–89 & n.2 (Pooler, J., dissenting) (making this very point).

Similarly, individuals in New York who commit crimes worse than Muzio's will be subject to statutory maximum penalties below Muzio's sentence if they are prosecuted by state authorities. For instance, in New York, an individual who has sex with a child under eleven years old has committed rape in the first degree. *See* N.Y. Penal Law § 130.35(3). As a class B felony, the maximum sentence for such

26

conduct is 25 years' imprisonment. *See id.* at § 70.00(2)(b). Thus, a child rapist who lives on Muzio's street might be capped at a sentence of 25 years so long as the local authorities prosecute him. Meanwhile, Muzio, who has never made inappropriate sexual contact with a child, receives a 35-year sentence in the federal courts. Respect for the law decreases when the severity of a defendant's punishment differs so drastically depending on the identity of the investigative authority.[13] Indeed, the disparity in punishment ranges created by the fortuity of the court system that controls the prosecution corrodes public trust that our courts will deliver justice in all cases.

D.     Factors that Distinguish Among Child Pornography Production Defendants

It is not enough to say that we must distinguish among child pornography production defendants and that the Guidelines do not effectively do so. I believe that Courts of Appeals have the obligation to step into the void and provide meaningful guidance for district judges through development of a common law of sentencing. I set forth below a series of non-exclusive factors that I believe should be considered by sentencing judges and reviewing courts when dealing

---

[13] Although disparities between state and federal punishments exist in many cases—and I do not suggest that such disparities are always cause for re-examination of the reasonableness of federal sentences—the disparity here is extraordinarily salient and difficult to ignore.

27

with child pornography offenders.[14]  These factors are intended to provide a broad framework to assist courts in evaluating the relative seriousness of child pornography production offenses, a task that courts are obliged to undertake in order to avoid treating all child pornography production offenders like the worst such offenders.  This list is not exhaustive, but I hope it demonstrates some of the many ways in which child pornography production offenses vary in seriousness.[15]  Those differences must be considered by sentencing judges and by reviewing courts as they go about the difficult and often disturbing task of punishing producers of child pornography.  Some of these factors are included in the Guidelines, at least indirectly, and some are not.

Factors regarding the nature of the offense:

1. Did the defendant engage in violence?  The worst child pornography production cases involve the filming of child rape; forced or coerced sex acts are among the most serious offenses imaginable.

---

[14]  Of course, the "history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), are important in every sentencing and so will be an important factor in imposing a sentence on a producer of child pornography, but I do not focus on that factor here.

[15]  The genius of the common law is that factors identified by one court are refined and supplemented by future decisions, resulting in an accretion of judgments that wears a pathway through a difficult legal problem.  I hope that courts undertake that process in the sentencing of child pornography production cases, where the guidance of the Sentencing Guidelines is so wanting.

2.  What is the nature of the sexual contact involved?  The conduct ranges from no actual contact to touching of genitalia to full penetration or oral sex.  Repeated conduct (multiple times or multiple victims) is substantially more serious than a single episode.

3.  How was the pornography produced?  Was the defendant filming his own interaction with the victim, filming another's interaction, passively recording through a hidden surveillance device, or soliciting victims' selfies?  Did the defendant participate alone or with others?

4.  What was the extent of the distribution or use of the images?  Was there a commercial exploitation?  How wide was distribution on the internet?  Were the images used as currency or to barter?

5.  Did the defendant engage in deceit or trickery, including identity misrepresentation?  Fraudulently inducing "voluntary" participation of the victim reflects serious wrongdoing.

6.  How many films or images did the defendant create?  Production of a large volume of material reflects consciousness of wrongdoing.

Factors regarding the status of the victim(s):

7.  How old was the victim or victims?  The age of a victim can dramatically affect the crime's seriousness; in general, the younger the more serious, with crimes involving very young victims being especially horrific.

8. How many victims were there? The number of victims and the length of time over which the conduct occurred both can reflect seriousness.

9. What relationship/responsibility did the defendant have vis-à-vis the victim? Was the defendant a parent, guardian, relative, babysitter, or person with authority over the victim?

10. What was the intellectual capacity of the victim? Was the victim mentally disabled, drugged, or too young to resist/understand?

In my view, factors one, two, and three are the most important considerations, and they cut in Muzio's favor. As described above, Muzio did not engage in violence; he had no sexual contact with any victim; and he himself did not film any child pornography. Factors seven, nine, and ten also weigh in Muzio's favor. Although Muzio's conduct involved girls as young as 11 (including Victim 1), most of his victims "were between 13 and 14 years old," PSR at ¶ 3(i); many production cases involve much younger children. Further, Muzio and all his victims were strangers, and Muzio did not target especially vulnerable young girls, although he did use deceit to snare his victims, so factor five weighs against him. The extent of Muzio's conduct—captured in factors

30

four, six, and eight—also weighs against him, but many production defendants engage in more extensive conduct.

Application of these factors again confirms that Muzio's sentence was drastically out of line with the specific facts of his offense and with the nature of his victims.

## III.  CONCLUSION

For the foregoing reasons, I would vacate Muzio's sentence and remand for resentencing.  Muzio's sentence is shockingly high and therefore substantively unreasonable.  Because the majority has decided to affirm, I respectfully dissent.