19-3746-cr(L)
*United States v. Westley*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

       **At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20ᵗʰ day of October, two thousand twenty-one.**

PRESENT:
> JOHN M. WALKER, JR.,
> JOSEPH F. BIANCO,
> STEVEN J. MENASHI,
>     *Circuit Judges.*

_____

United States of America,

      *Appellee*,

      v.

19-3746-cr(L),
19-3826-cr(CON),
20-163-cr(CON),
20-779-cr(CON)

Milton Westley, AKA Reese, Clifford Brodie, AKA Cliff G, Sedale Pervis, AKA Scope, Dejuan Ward, AKA Hot Boi,

      *Defendants-Appellants*,

Michael Belle, AKA MB, Michael Via, AKA Mike Live,

      *Defendants*.*

_____

---

\* The Clerk of Court is respectfully directed to amend the caption as set forth above.

FOR APPELLEE:                          JOCELYN COURTNEY KAOUTZANIS (Marc H.
                                       Silverman, *on the brief*), Assistant United States
                                       Attorneys, *for* Leonard C. Boyle, Acting United
                                       States Attorney for the District of Connecticut, New
                                       Haven, CT.

FOR DEFENDANT-APPELLANT
MILTON WESTLEY:                        STEVEN Y. YUROWITZ, Newman & Greenberg LLP,
                                       New York, NY.

FOR DEFENDANT-APPELLANT
CLIFFORD BRODIE:                       ROBERT J. BOYLE, Law Office of Robert J. Boyle,
                                       New York, NY.

FOR DEFENDANT-APPELLANT
SEDALE PERVIS:                         W. THEODORE KOCH III, Koch, Garg & Brown,
                                       Niantic, CT.

FOR DEFENDANT-APPELLANT
DEJUAN WARD:                           JON L. SCHOENHORN, Jon L. Schoenhorn &
                                       Associates, LLC, Hartford, CT.

Appeal from judgments of the United States District Court for the District of Connecticut (Shea, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of conviction entered on November 1, 2019 against Milton Westley, on November 7, 2019 against Clifford Brodie, on January 14, 2020 against Sedale Pervis, and on March 2, 2020 against Dejuan Ward are **AFFIRMED**.

Milton Westley, Clifford Brodie, Sedale Pervis, and Dejuan Ward (collectively, "defendants")[1] appeal from their respective judgments of conviction, after the entry of guilty pleas, arising out of their participation in the racketeering activity of the Goodrich Street Boys ("GSB"),

---

[1] The other defendants in the underlying case—Michael Belle and Michael Via—are not parties to the instant appeal.

a violent gang responsible for drug trafficking and numerous shootings in New Haven, Connecticut. Each defendant pled guilty to Count One of the Indictment—conspiracy to engage in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d).

The district court sentenced each of the defendants to terms of imprisonment above their respective advisory ranges pursuant to the United States Sentencing Guidelines: Westley to 156 months' imprisonment, Brodie to 168 months' imprisonment, Pervis to 144 months' imprisonment, and Ward to 97 months' imprisonment. Westley, Brodie, and Pervis admitted to the drug trafficking conspiracy predicate racketeering act, as well as to a second predicate racketeering act involving at least one of the alleged shootings that constituted an attempted murder in furtherance of the GSB racketeering conspiracy. Ward admitted to three predicate racketeering acts: drug trafficking conspiracy, Hobbs Act robbery conspiracy, and obstruction of justice. On appeal, the defendants challenge their respective sentences on several different grounds.

We assume the parties' familiarity with the underlying facts and prior record of proceedings, to which we refer only as necessary to explain our decision to affirm.

I.    **The Westley Appeal**

The sole challenge brought by Westley on appeal relates to his contention that the government breached the plea agreement during his sentencing proceeding. In particular, Westley asserts that the government breached the plea agreement by arguing—in response to the district court's inquiry—that the base offense level under the United States Sentencing Guidelines for his participation in the shooting of Marquis Freeman should be calculated at level 33 because it was committed with malice and premeditation, rather than the level 27 that had been stipulated to by

the parties in the plea agreement. *See* U.S.S.G. § 2A2.1. After the district court raised this issue *sua sponte* at sentencing, the government explained that, although level 33 should have applied based upon the facts, the government agreed to the lower offense level of 27 in the plea agreement because of mitigating factors that applied to Westley's particular case.

In evaluating whether the government breached a plea agreement, "[w]e review interpretations of [the] plea agreement[] *de novo* and in accordance with principles of contract law." *United States v. Wilson*, 920 F.3d 155, 162 (2d Cir. 2019) (internal quotation marks omitted). "[W]e construe plea agreements strictly against the government and do not hesitate to scrutinize the government's conduct to ensure that it comports with the highest standard of fairness." *United States v. Vaval*, 404 F.3d 144, 152 (2d Cir. 2005) (internal quotation marks omitted). Where, as here, the appellant did not raise the argument below, we examine the alleged breach under plain error review. *United States v. Taylor*, 961 F.3d 68, 81 (2d Cir. 2020). "To establish plain error, a defendant must demonstrate: (1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Bleau*, 930 F.3d 35, 39 (2d Cir. 2019) (per curiam) (internal quotation marks omitted).

Even assuming *arguendo* that Westley could establish a breach of the plea agreement based upon the government's response to the district court's inquiry at sentencing, we find no plain error because Westley was not harmed by the alleged breach. *See United States v. Habbas*, 527 F.3d 266, 270–71 (2d Cir. 2008); *see also Puckett v. United States*, 556 U.S. 129, 142 n.4 (2009) (requiring a defendant to show a breach actually affected his sentence). It is abundantly clear from the record that, notwithstanding the government's response to the inquiry regarding the potential application of the higher offense level of 33 to the facts, the district court did not apply the higher

4

level, but rather adhered to the level 27 that was stipulated to by the parties in the plea agreement. For example, in calculating the Guidelines range at sentencing, the district court explicitly stated the following with respect to the attempted murder: "[T]he base offense level is 27 under Section 2A2.1(a)(2), although as I will discuss later, it would appear to me that there's a basis for imposing a higher offense level of 33 here. But I'm not going to do that. I'll talk about that later. I'm going to adopt the parties' stipulation that it's 27." Gov't App'x at 594. Later, the district court further stated, "Again, I adopted the guidelines range that the parties have stipulated to." *Id.* at 618. Moreover, at the conclusion of the sentencing, the district court reiterated, "Ultimately, I adopted the parties' guidelines calculation. I did not adopt the first-degree murder—or first-degree attempt of [level] 33. I reached this sentence through an upward variance for the reasons I've indicated." *Id.* at 640–41. Thus, even if the government breached the agreement by suggesting that the higher level should have been applied based upon the facts, that alleged breach did not affect Westley's substantial rights because the district court adhered to level 27, which was stipulated to by the parties.

In any event, the district court further explained at sentencing that it "would have imposed this [156-month] sentence regardless of the guidelines." *Id.* at 640. That clear statement by the district court, expressing its reliance on the factors under 18 U.S.C. § 3553(a) apart from the Guidelines to independently arrive at the 156-month sentence, provides an additional basis for concluding that any issues regarding the Guidelines calculation did not impact the sentence imposed by the district court.

Accordingly, we find no plain error with respect to the alleged breach of the plea agreement and affirm Westley's sentence.

## II. The Brodie, Pervis, and Ward Appeals

On appeal, Brodie challenges the substantive reasonableness of his 168-month sentence, while Pervis and Ward challenge both the procedural and substantive reasonableness of their respective 144-month and 97-month sentences.  As set forth below, we find each of these challenges to be without merit.

This Court "review[s] the procedural and substantive reasonableness of a sentence under a deferential abuse-of-discretion standard."  *United States v. Yilmaz*, 910 F.3d 686, 688 (2d Cir. 2018) (per curiam).  "A sentence is *procedurally* unreasonable if the district court fails to calculate (or improperly calculates) the Sentencing Guidelines range, treats the Sentencing Guidelines as mandatory, fails to consider the § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails adequately to explain the chosen sentence."  *United States v. Jesurum*, 819 F.3d 667, 670 (2d Cir. 2016) (internal quotation marks omitted).  This Court's "review of a sentence for substantive reasonableness is particularly deferential, and we will set aside only those sentences that are so shockingly high, shockingly low, or otherwise unsupportable as a matter of law that allowing them to stand would damage the administration of justice."  *United States v. Muzio*, 966 F.3d 61, 64 (2d Cir. 2020) (internal quotation marks omitted).  A sentence is substantively reasonable if it can "be located within the range of permissible decisions."  *United States v. Degroate*, 940 F.3d 167, 174 (2d Cir. 2019) (internal quotation marks omitted).

We address the challenges of each of the three defendants in turn.

### a.  Brodie

Brodie asserts that his 168-month sentence was substantively unreasonable because it represented a 40% upward variance from the applicable Guidelines range (97–121 months) and,

according to Brodie, was unsupportable because of the existence of mitigating factors such as his difficult background, the fact that some of the alleged predicate acts occurred when he was only twenty years old, his lack of any prior criminal conviction, his expression of remorse, and the lower sentences received by his co-defendants. We disagree.

We have emphasized that "[t]he particular weight to be afforded aggravating and mitigating factors is a matter firmly committed to the discretion of the sentencing judge." *United States v. Broxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012) (internal quotation marks omitted). Here, the district court explicitly recognized Brodie's "difficult childhood," which involved experiences with poverty and violence, including the death of Brodie's older brother. Gov't App'x at 1111– 12. The district court also acknowledged Brodie's youth, immaturity, and lack of criminal history, explaining that Brodie's sentence would have been "substantially longer . . . but for those things." *Id.* at 1113; *see also id.* at 1123 (stating in the judgment of conviction that "[Brodie's] youth and lack of criminal history nonetheless mitigated somewhat the size of the variance"). Notwithstanding these mitigating factors, the district court concluded that the advisory Guidelines range "[was] not adequate to reflect the seriousness of the offense" and to serve the purposes of protecting the public and providing specific deterrence to Brodie. *Id.* at 1115. More specifically, the district court explained that the Guidelines range did not adequately account for "several instances of serious criminal conduct" in which Brodie participated, such as "the shooting of Damien Smith, the shootings of James and Donald Harris, [and] the . . . shootings at Brandon Shealy's house," and that such conduct warranted "a substantial upward variance." *Id.*

On this record, we conclude that the district court's above-Guidelines sentence of 168 months' imprisonment was well within its discretion under the circumstances of this case. As

noted by the district court, as part of his guilty plea, Brodie admitted to his participation in the GSB's drug trafficking activity, as well as his participation in the attempted murders of Marquis Freeman and Terrence Lee on May 27, 2016, all of which was reflected in the Guidelines range of 97 to 121 months' imprisonment. That range, however, did not include the three additional GSB shootings in which Brodie participated (based upon the findings of the district court) and were determined to qualify as aggravated assaults. Thus, notwithstanding Brodie's mitigating factors, 168-months' imprisonment is not "shockingly high" for his participation in multiple separate shootings, including two attempted murders, as well as drug trafficking, in connection with the racketeering activities of a violent street gang. *Muzio*, 966 F.3d at 64.

Finally, Brodie asserts that his sentence was substantively unreasonable because it is twelve months longer than that of co-defendant Westley, even though Westley was the shooter in the attempted murders of Freeman and Lee. As an initial matter, we note that we have "repeatedly made clear that section 3553(a)(6) requires a district court to consider *nationwide sentence disparities*, but does not require a district court to consider disparities between co-defendants." *United States v. Ghailani*, 733 F.3d 29, 55 (2d Cir. 2013) (emphasis added) (internal quotation marks omitted). In any event, in this case, the district court did explicitly consider the "issue of disparities" in sentencing among the co-defendants and explained why Brodie's sentence was longer than that of Westley. Gov't App'x at 1116. In particular, the district court noted that Brodie was two years older than Westley and further emphasized to Brodie, who was involved in more shootings than Westley and "incited others to engage in violence," that: "there's no one involved in this case who was more brazen and had less respect for the law, as evidenced by your communications about these shootings, than you." *Id.* at 1114. We see nothing in the district

8

court's explanation regarding the comparison of Brodie and Westley, or in its consideration of the sentencing disparities factor, that would place the 168-month sentence outside the bounds of the broad discretion afforded a sentencing judge in balancing the various Section 3553(a) factors. In sum, we conclude that Brodie's substantive reasonableness challenge to his sentence is without merit.

### b. Pervis

Pervis challenges both the procedural and substantive reasonableness of his 144-month sentence. First, Pervis asserts that his sentence was procedurally unreasonable because the district court did not consider the negative impact a long sentence would have on his ability to participate in his son's life, and because the district court should have considered the objective of "promoting respect for the law" under Section 3553(a) as a mitigating factor—namely, that a lower sentence might promote respect for the law in the community because it "might help 'unwind decades of mass incarceration.'" Pervis Reply Br. at 10 (quoting *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019)). Second, with regard to substantive reasonableness, Pervis argues that the district court abused its discretion in sentencing Pervis disproportionately when compared to his co-defendants. As set forth below, we find Pervis's sentencing challenges to be unpersuasive.

With respect to procedural reasonableness, Pervis neither challenges the district court's calculation of the Guidelines range, nor contends that the district court failed to thoroughly review the record or to explain its reasons for the sentence. Instead, Pervis argues that the district court failed to "consider socio-economics in crafting a sentence that promotes respect for the law," Pervis Br. at 23, including the impact of substantial sentences on the defendant's family and broader community. Because Pervis failed to specifically raise this objection at sentencing, we

9

review this procedural challenge for plain error. *United States v. Verkhoglyad*, 516 F.3d 122, 128 (2d Cir. 2008). As a threshold matter, before imposing its sentence, the district court explicitly referenced Section 3553(a) and various sentencing factors contained therein, including the need "to promote respect for the law," and noted that "[t]hose are the purposes of a criminal sentence that I'm required to consider under the law." Gov't App'x at 959. The district court further discussed the "promote respect for the law" factor and noted that Pervis has failed to demonstrate respect for the law when filing a false affidavit in connection with a suppression hearing and that "there clearly is a need for this sentence to demonstrate that submitting affidavits with stories that might sound good but just don't square with the facts is serious conduct." *Id.* at 963–64. Moreover, although not discussed specifically in the context of the "promote respect for the law" factor, the district court explicitly considered the impact that Pervis's incarceration would have on his family:

> I want to express my appreciation to Mr. Pervis's family members and friends who came today, because it's just as important for me to hear about the impact that a sentence is going to have on family members.

> It's clear that Mr. Pervis has a supportive, loving family, that he has children who care about him and miss him, and that the sentence today and Mr. Pervis's incarceration so far has imposed and will impose a real cost on them.

*Id.* at 958.

In short, there is no basis on this record to conclude that the district court procedurally erred in its consideration of the "promote respect for the law" factor under Section 3553(a) or the impact that Pervis's sentence would have on others—and certainly there was no plain error with respect to such considerations. In essence, Pervis would have preferred that the district court weigh this factor differently and now asks this Court to adopt his position and remand for further

10

consideration. However, as we have explained in the context of substantive reasonableness, "[i]f the ultimate sentence is reasonable and the sentencing judge did not commit procedural error in imposing that sentence, we will not second guess the weight (or lack thereof) that the judge accorded to a given factor or to a specific argument made pursuant to that factor." *United States v. Pope*, 554 F.3d 240, 246–47 (2d Cir. 2009) (alteration in original) (internal quotation marks omitted).

Turning to his substantive reasonableness challenge, Pervis also argues that the district court abused its discretion in sentencing Pervis disproportionately as compared to his co-defendants. Our review for substantive reasonableness "focuses on a district court's explanation of its sentence in light of the factors contained in 18 U.S.C. § 3553(a)." *United States v. Gonzalez*, 529 F.3d 94, 98 (2d Cir. 2008). The district court explained that its upward variance from the Guidelines range was necessary because that range "do[es] not account for several serious criminal acts for which I've found that Mr. Pervis is indeed responsible: the shooting of Damien Smith, the shooting at Brandon Shealy's house, [and] supplying guns generally." Gov't App'x at 964–65. Thus, the district court concluded:

> [M]y view is that the guidelines range of 78 to 97 months does not adequately reflect the seriousness of the offense or adequately serve the other purposes of sentencing that I find need to be served here and so . . . I find that a substantial variance above the guidelines range is necessary to serve those purposes and to take full account of Mr. Pervis's criminal conduct, even given how difficult his separation is going to be for his family members.

*Id.* at 965. The district court further noted that Pervis sent "texts and communications encouraging violence and, indeed, celebrating violence," and that his serious crimes "inflicted enormous harm for well over a year in the city of New Haven." *Id.* at 963.

11

We conclude that it was well within the range of the district court's permissible discretion to impose the above-Guidelines sentence of 144 months in order to, *inter alia*, adequately account for two additional shootings, including one in which the victim was seriously injured, which were not counted as relevant conduct under Pervis's applicable Guidelines range of 78 to 97 months. Even when balanced against the mitigating factors that Pervis articulated, a 144-month sentence is not "shockingly high" for supplying the guns used in the attempted murder of Freeman, as well as supplying guns to GSB members for at least two additional shootings. *Muzio*, 966 F.3d at 64.

We also find Pervis's contention regarding sentencing disparities between him and his co-defendants to be unpersuasive. Although a district court is not required to consider disparities in sentencing among co-defendants (as discussed *supra*), the district court did explicitly address this issue by comparing Pervis's sentence to those of his co-defendants. In particular, the district court recognized that although Pervis did not pull the trigger in any of the shootings, he knew of the shootings, supplied firearms, celebrated the violence, and was older than his co-defendants. The district court thus imposed a sentence shorter than the sentences it imposed on shooters such as Westley (156 months) and Brodie (168 months), but higher than Ward (97 months) and other co-defendants whom it found to be less culpable. We find no substantive unreasonableness in the district court's sentence, including when compared to the sentences of Pervis's co-defendants, in light of its assessment of the Section 3553(a) factors.

In sum, Pervis has failed to establish that his 144-month sentence is procedurally or substantively unreasonable.

12

### c. Ward

Ward raises both procedural and substantive challenges to his sentence. As part of his guilty plea to RICO conspiracy, Ward admitted to three predicate racketeering acts—namely, drug trafficking conspiracy, Hobbs Act robbery conspiracy, and obstruction of justice based on a 2015 Facebook post in which Ward revealed an individual's cooperation with law enforcement. After holding a *Fatico* hearing, the district court found that Ward also attempted to murder Pharoh Jackson in furtherance of his racketeering conspiracy with other GSB members and that a subsequent Facebook post on March 22, 2016 constituted an additional obstruction of justice offense. Having thereafter reached an advisory Guidelines range of 70 to 87 months' imprisonment, the district court imposed a 97-month sentence.

With respect to his procedural challenges, Ward argues the district court erred: (1) in its assignment of a base level 19 under the Guidelines to the drug trafficking predicate as part of the RICO conspiracy; (2) in its determination that the 2016 Facebook post constituted obstruction of justice under 18 U.S.C. § 1513(b); and (3) in its finding that Ward shot Pharoh Jackson. As set forth below, we conclude that the first and second alleged errors, even if established, were harmless and do not require re-sentencing. In addition, we conclude that there was no procedural error in the district court's finding regarding Ward's involvement in the shooting of Pharoh Jackson. Finally, Ward's challenge to the substantive reasonableness of the sentence is also unpersuasive.

First, Ward contends that the district court procedurally erred in its Guidelines calculation with respect to the drug conspiracy predicate. In particular, Ward argues that, because 20–40 kilograms of marijuana were attributable to him, the drug conspiracy "group" under the Guidelines should have been assigned a base offense level of 16, and not a level 19. Ward asserts that the

13

minimum base offense level of 19 under U.S.S.G. § 2E1.1 for "underlying racketeering activity" does not apply to each racketeering predicate group, but rather is only applied if the combined offense level for all the predicate acts under the Guidelines' multi-group adjustment is less than level 19.

We review challenges to a Guidelines calculation *de novo*. *United States v. Vargas*, 961 F.3d 566, 570 (2d Cir. 2020). A district court procedurally errs when it improperly calculates the applicable Guidelines range. *Id.* However, "[w]here we identify procedural error in a sentence, but the record indicates clearly that the district court would have imposed the same sentence in any event, the error may be deemed harmless, avoiding the need to vacate the sentence and to remand the case for resentencing." *United States v. Jass*, 569 F.3d 47, 68 (2d Cir. 2009) (internal quotation marks omitted).

Here, we need not resolve the disagreement over the interpretation of Section 2E1.1 because any alleged error was harmless. Even if the drug conspiracy group had been assigned a level 16 (as urged by Ward) and received no units under the Guidelines in the multi-group calculation, Ward's Guidelines range would have remained exactly the same—namely, a total offense level of 27, with a resulting advisory range of 70 to 87 months' imprisonment.[2] In any event, in explaining its sentence, the district court explicitly noted that it would have reached the same sentence under the Section 3553(a) factors regardless of the Guidelines calculation. Thus,

---

[2] The lack of any impact on the Guidelines calculation arising from this determination is attributable to the fact that, although the district court assigned one-half unit to the drug conspiracy group pursuant to the multi-grouping formula set forth in U.S.S.G. § 3D1.4(b) for a base offense level 19 and thereby increased the overall total to 3 units, Section 3D1.4 provides for an increase of three levels for either 2.5 units or 3 units to the group with the highest adjusted offense level. Thus, even if no units were assigned to the drug conspiracy group based upon an offense level 16, the 3-level increase under the multi-grouping formula would have remained the same.

14

for each of these independent reasons, any error regarding the offense level attributed to the drug conspiracy predicate is clearly harmless.

We reach the same conclusion with respect to Ward's second procedural challenge—that is, that the district court erred in finding, after a *Fatico* hearing, that the defendant's relevant conduct included obstruction of justice under Section 1513(b), based on a 2016 Facebook post. We need not consider Ward's various procedural challenges to that finding because the obstruction of justice finding based on the 2016 Facebook post did not impact the sentence imposed by the district court. As discussed above, we generally refuse to vacate a sentence where any alleged error "did not affect the outcome of the sentencing proceeding." *United States v. Alvarado*, 720 F.3d 153, 160 (2d Cir. 2013) (per curiam). That is precisely the situation here. The district court calculated the other obstruction of justice finding based upon the 2015 Facebook post (to which Ward pled guilty and that he does not challenge on appeal) to be a level 25, and similarly assigned a level 25 to the disputed 2016 Facebook post. However, the district court then determined that the two obstruction offenses should be grouped together, and concluded that the offense level for that group is 25—*i.e.*, the same offense level that would have been assigned to that group if it contained only the uncontroverted 2015 obstruction of justice. Thus, the total offense level for the obstruction of justice group would have been exactly the same—70 to 87 months' imprisonment— even if the district court had not considered the obstruction of justice offense based on the 2016 post. In any event, as noted above, the district court explicitly stated that "the sentence is ultimately not driven by the guidelines," including the findings with respect to the obstruction enhancements, in this case. Gov't App'x at 826; *see also id.* ("I would impose the same sentence even if I agreed with [defense counsel] that there was no substantial interference with the Government

15

investigation and no threat to cause physical injury, which were two of the enhancements under the obstruction guideline."); *id.* at 832 (stating in the judgment: "As explained in more detail at the sentencing, the Court would have imposed the same sentence even had it made different Guidelines calculations"). In short, it is clear that the district court's sentence was not impacted by consideration of the 2016 Facebook post and, thus, any error with respect to the obstruction finding relating to that post is harmless.

In connection with the finding as to Ward's involvement in the attempted murder of Pharoh Jackson, Ward argues, *inter alia*, that the district court erred in crediting Jackson's grand jury testimony identifying Ward as the shooter, even though Jackson did not testify at the *Fatico* hearing and, according to Ward, also gave contradictory statements to Ward's counsel and a private investigator in an interview. The government bears the burden of proving facts supporting the application of attempted murder within the Guidelines, and it must prove such facts by a preponderance of the evidence. *United States v. Kent*, 821 F.3d 362, 368 (2d Cir. 2016). Factual findings are, in turn, reviewed for clear error, *United States v. Mulder*, 273 F.3d 91, 116 (2d Cir. 2001), *cert. denied sub nom. Johnson v. United States*, 535 U.S. 949 (2002), including when objections are made regarding the admissibility of alleged hearsay statements, *United States v. Diaz*, 176 F.3d 52, 83 (2d Cir. 1999). Therefore, "our role as the reviewing court under this extremely deferential standard of review is not to decide disputed factual issues *de novo* or to reverse simply if we would have decided the case differently, but rather to determine whether the district court's account of the evidence is plausible in light of the record viewed in its entirety." *United States v. Rizzo*, 349 F.3d 94, 98 (2d Cir. 2003).

16

As a threshold matter, Ward had no right to confront Jackson at a sentencing hearing to attempt to discredit his grand jury testimony because "the right of confrontation does not apply to the sentencing context and does not prohibit the consideration of hearsay testimony in sentencing proceedings." *United States v. Martinez*, 413 F.3d 239, 242 (2d Cir. 2005). Moreover, the district court did not only rely on Jackson's grand jury testimony in reaching its determination, but rather also explained that "a series of Facebook posts and messages spanning a period of 15 months in which Mr. Ward elaborated on his motive for shooting Jackson, strongly suggested that he himself shot Jackson on September 16, 2015, and made statements suggesting intent to kill." Gov't App'x at 490. In light of the strong deference we afford the district court's evaluation of the evidence presented, we find no error in the district court's determination that such evidence—including, but not limited to, Jackson's grand jury testimony—in its totality proved by a preponderance of the evidence that Ward shot and attempted to kill Jackson. *See United States v. Sampson*, 898 F.3d 287, 312 (2d Cir. 2018) ("Where there are two permissible views of the evidence, the [sentencing judge's] choice between them cannot be clearly erroneous." (alteration in original) (internal quotation marks omitted)).

Finally, we also are unpersuaded by Ward's argument that his sentence is substantively unreasonable because of the district court's upward variance from the Guidelines range. As we have explained, "the extent of the departure from the typical sentence for the type of crime at issue is a significant factor in determining how compelling the sentencing court's reasons must be" to vary from the Guidelines range. *United States v. Douglas*, 713 F.3d 694, 700 (2d Cir. 2013). Here, the district court only imposed an upward variance of ten months from the Guidelines range of 70 to 87 months' imprisonment. In doing so, the district court considered mitigating factors,

17

including, *inter alia*, Ward's difficult childhood, even while considering the gravity of Ward's criminal conduct—which included selling drugs, participating in a robbery conspiracy, and attempting to murder Jackson—as well as Ward's role in "celebrat[ing] violence" through his texts and other communications and promoting retaliation within the gang. Gov't App'x at 822. We find no basis to conclude that the district court's 97-month sentence was substantively unreasonable in light of the totality of the information presented at sentencing.

In sum, Ward's procedural and substantive challenges fail to provide any grounds to disturb his sentence.[3]

*   *   *

We have considered defendants' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgments of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[3] We are similarly unconvinced by Ward's contention that the district court should have recused itself at the sentencing stage because it refused to address Jackson's allegation that Ward's counsel had engaged in misconduct by interviewing Jackson outside the presence of Jackson's attorney. Ward's counsel, who denied that Jackson ever informed him that he was represented, was concerned that, "because the Court didn't rule on that [allegation], it le[ft] the impression that the Court may be biased against my client because it's biased against me." Gov't App'x at 771. We conclude that the district court did not abuse its discretion in declining to recuse itself over this issue. The district court made clear to Ward's counsel that "[i]n no way have I made any finding that suggests that I believed Mr. Jackson when he [made that allegation]" and "[w]hether or not that [allegation] is true does not affect any of the rulings I've made here." *Id.* at 772. The district court further emphasized to Ward's counsel that "[i]n no way should you take [the lack of a finding on this allegation] as any doubt that I have about you personally, [or] your integrity," and reiterated that no finding was necessary because it was irrelevant to the district court's sentencing determination. *Id.* at 772–73. In short, there is nothing in the record to suggest any antagonism by the district court toward defense counsel, nor is there any other ground for recusal raised by the district court's handling of this issue. *See United States v. Carlton*, 534 F.3d 97, 100 (2d Cir. 2008).

18